# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
October 20, 2015

Plaintiff-Appellee,

v

No. 321669
Emmet Circuit Court
LC No. 13-003893-FH

GABRIEL LEE GREEN,

Defendant-Appellant.

Before: MARKEY, P.J., and STEPHENS and RIORDAN, JJ.

PER CURIAM.

A jury acquitted defendant of six counts of third-degree criminal sexual conduct (CSC III), MCL 750.520d(1)(b), but convicted defendant of three counts of CSC III involving force or coercion against complainant JG and one count of fourth-degree criminal sexual conduct involving force or coercion (CSC IV), MCL 750.520e(1)(b) against complainant JB (collectively referred to as the complainants). The trial court sentenced defendant to concurrent terms of 5 to 15 years in prison for each of the CSC III convictions and 12 months in prison for the CSC IV conviction. Defendant appeals by right. We affirm.

Defendant was a child protective services (CPS) worker for the Department of Human Services (DHS). His convictions arise out of his sexual relations with complainant JG and sexual contact with complainant JB while working as the CPS worker assigned to the respective neglect or abuse complaints filed with DHS against the individual complainants. The prosecution's theory of the case was that defendant coerced the complainants to agree to his behavior because he was in a position of authority at the time of the acts. Defendant argued that the sexual relations and contact were consensual.

Defendant first argues that there was insufficient evidence at the preliminary examination to support his bindover on CSC III and CSC IV charges. A defendant may not appeal whether the evidence at the preliminary examination was sufficient to warrant a bindover if the defendant was "fairly convicted at trial." *People v Wilson*, 469 Mich 1018; 677 NW2d 29 (2004). See also *People v Hall*, 435 Mich 599, 601-603; 460 NW2d 520 (1990) (holding that "evidentiary error committed at the preliminary examination stage of this case does not require automatic reversal of the subsequent conviction absent a showing that defendant was prejudiced at trial"). As discussed fully in this opinion, we find no merit in the issues raised by defendant on appeal.

-1-

Thus, we conclude that defendant was fairly convicted at trial, and we may not review whether the evidence at the preliminary examination was sufficient to warrant a bindover.

Defendant next argues that the trial court abused its discretion by restricting cross-examination of complainant JG at trial and not admitting as substantive evidence under MRE 801(d)(1)(A) JG's purportedly inconsistent preliminary examination testimony. Defendant preserved this issue by seeking to impeach her with certain preliminary examination testimony, arguing that her trial testimony was inconsistent. MRE 103(a)(2). We review for an abuse of discretion a preserved challenge to the admission of evidence. *People v Orr*, 275 Mich App 587, 588; 739 NW2d 385 (2007). "A trial court abuses its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes." *Id*.

In general, hearsay—an out-of-court statement offered for the truth of the matter asserted—may not be admitted into evidence. MRE 801; MRE 802. MRE 801(d)(1)(A) provides that a prior statement of a declarant is not hearsay if: (1) "the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement" and (2) "the statement is inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition." The word "inconsistent" is defined as " 'marked by incompatibility of elements,' 'not in agreement with each other.' and 'not consistent in standards of behavior.' " *People v Chavies*, 234 Mich App 274, 282; 593 NW2d 655 (1999), overruled on other grounds by *People v Williams*, 475 Mich 245; 716 NW2d 208 (2006), quoting *Random House Webster's College Dictionary* (1997). "[I]nconsistency is not limited to diametrically opposed answers but may be found in evasive answers, inability to recall, silence, or changes of position." *Id*. (citation omitted). The word "consistent," however, is defined as " 'agreeing or accordant; compatible; not self-contradictory,' 'constantly adhering to the same principles, course, form, etc.,' and 'holding firmly together; cohering.' " *Id*. at 282 n 3, quoting *Random House Webster's College Dictionary* (1997).

Defendant initially points to the following trial testimony that was purportedly inconsistent with complainant JG's preliminary examination testimony:

> *Q*. [by the prosecutor on direct examination] So what happened next?
>
> *A*. We continued light conversation. He asked if [I] could move my shorts so he could get in better towards me – and my legs. And at this point, I was rolled over onto my–I was laying on my back. And he moved my shorts over and started over and started massaging my groin area and I asked him at that point, "Are we still on a professional level?" And he looked at me and said, "Do you want to be?" At this point, I told him, "You know, this probably is not a good idea. You're married. I have a fiancé and you're my CPS worker and you're investigating me. This isn't a very good idea. At that –
>
> . . .
>
> *Q*. So, you actually spoke up and said something?
>
> *A*. Yes, I did.

-2-

*Q*. How did he respond?

*A*. He said, "Okay, let's just–it's up to you." And he continued on with his massage and we were making light conversation. I'm not exactly–I don't exactly remember certain things that were said.

Contrary to defendant's argument, trial counsel was allowed to use JG's preliminary examination testimony to impeach the above trial testimony. Counsel asked JG about her discussion with defendant regarding why she did not think the sexual activity was a good idea, bringing out that at the preliminary examination she did not use his CPS status as one of the reasons:

*Q*. Okay. You were asked on direct examination about your protesting or discussion or however you characterize it, with regards to [defendant] initially engaging in sexual conduct. Do you remember being asked questions about what you said?

*A*. Yes.

*Q*. Okay, do you remember that same exact issue being addressed back at the preliminary examination, back in October of last year?

*A*. What exact issue?

*Q*. The exact issue of what you said to [defendant]?

*A*. What exactly did I say to [defendant]?

*Q*. I'm asking. I'll show you, but I want to ask you if you remember being asked the same question, the same line of questioning.

*A*. Somewhat similar, yes.

*Q*. Okay at the preliminary examination, on page 63, lines four, five, six and seven, you were on direct examination and being asked questions by the same prosecutor, do you remember the exchange?

*A*. (No Audible Response).

*Q*. Once again, 63, four, five, six, and seven.

*A*. Yes, I remember being asked that question.

*Q*. Okay. Is that the same answer that you gave today?

*A*. Yes.

*Q*. Back in October, you were asked the question by [the prosecutor]. "So, after the digital, what happened next?" Answer at line five, do you remember making the statement, "And then I asked if we were still being professional and

he asked me, 'Do you want to be?' And at that point, I explained that I had a fiancé and he was married." That's then end of your answer, correct?

*A*. So, I didn't go into full detail of what I said today?

*Q*. No, that's what I was asking you.

Because defendant was allowed to use the preliminary examination testimony during cross-examination, there was no error related to this testimony.

Next, defendant appears to argue that the trial court abused its discretion by not allowing trial counsel to introduce preliminary examination testimony that was purportedly inconsistent with complainant JG's trial testimony regarding whether defendant gave her the option of his stepping down as her caseworker before having sex. The trial court did not abuse its discretion by concluding that trial testimony—that JG never said defendant asked her whether she wanted him to step down as her caseworker because he was in a position of authority—was not inconsistent with her preliminary examination testimony. At the preliminary examination she testified that defendant asked her if she wanted to keep seeing him because it was up to her since he was in a position of authority. These two statements are not diametrically opposed, evasive, or a change of position. *Chavies*, 234 Mich App at 282. Instead, her denial at trial of making such a statement is consistent with her preliminary examination testimony. *Id*. at 282 n 3. Because the preliminary examination testimony was not inconsistent with complainant JG's trial testimony, we conclude the trial court did not abuse its discretion. *Orr*, 275 Mich App at 588.

Defendant next argues that the trial court abused its discretion by precluding trial counsel from admitting JG's preliminary examination testimony regarding the chronology of when defendant made the statement about leaving her case open so he could continue to see her. Defendant asserts that at trial she testified that it was made before her statement that she wanted to continue seeing defendant, but that at the preliminary examination she said the opposite. We have reviewed the record and conclude that the trial court did not abuse its discretion by permitting counsel to cross-examine JG about her prior testimony but not admitting it as substantive evidence. At the preliminary examination, JG testified that defendant told her he was going to keep her case open as long as possible so he could continue to see her. She did not testify as to when defendant made that comment in relation to her decision to continue the sexual relationship. Thus, the two statements are not diametrically opposed, or evasive, and do not constitute a change in her position. *Chavies*, 234 Mich App at 282. Instead, her two statements are consistent with each other. *Id*. at 282 n 3.

To the extent defendant argues that the prosecution improperly bolstered complainant JG's credibility and in-court testimony when trial counsel was "not permitted to impeach" her, we consider this issue abandoned. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation to supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998).

Defendant next argues that the trial court abused its discretion by concluding that complainant JB's statements to her stepdaughter and mother on the day she and defendant had

sexual contact were admissible under MRE 803(2) as excited utterances. We review for an abuse of discretion the trial court's evidentiary ruling. *Orr*, 275 Mich App at 588.

We find no abuse of discretion in the admission of two statements to the stepdaughter, one after each contact with defendant, under MRE 803(2). The first statement was made after defendant, while investigating alleged neglect or abuse, massaged complainant JB's shoulders, back, and inner thighs. The second statement was after the sexual contact that involved oral sex and sexual intercourse. While neither physical coercion nor violence was alleged in either occurrence, both occurred under the specter of defendant investigating complainant JB for child abuse and neglect. The stepdaughter testified that complainant JB was very upset and crying during both conversations. Given the circumstances surrounding both events, we conclude that they were a startling event. See *People v Smith*, 456 Mich 543, 552; 581 NW2d 654 (1998) (noting that sexual assault is a startling event). Both statements were made within a few minutes of defendant leaving the apartment so there was no time to contrive and misrepresent his actions. Finally, her statements were clearly related to the circumstances surrounding defendant's actions, which was the startling event. *People v Straight*, 430 Mich 418, 424; 424 NW2d 257 (1988). According the trial court wide discretion regarding its determination that JB was still under the stress of the startling event when she made the statements, see *Smith*, 456 Mich at 552, we find no abuse of discretion.

Similarly, we conclude that JB's statements to her mother on the same day as her contacts with defendant were admissible under MRE 803(2). The statements were made after defendant first massaged her shoulders, back, and inner thighs and later had oral sex and sexual intercourse. Again, while physical coercion or violence was not alleged, both contacts occurred under the specter of defendant's investigating JB for child abuse and neglect. Her mother testified that JB was very upset and crying when she related the events over the telephone. The statements were made within hours of defendant leaving the apartment, so there was little time to contrive and misrepresent his actions. Finally, her statements were clearly related to the circumstances surrounding defendant's actions, which was the startling event. *Straight*, 430 Mich at 424. Thus, giving the trial court wide discretion, we conclude that it did not abuse its discretion by finding the statements admissible as an excited utterance.

Defendant next argues that reversal is required because of cumulative evidentiary errors. However, "[a]bsent the establishment of errors, there can be no cumulative effect of errors meriting reversal." *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007). See also *People v Bahoda*, 448 Mich 261, 292 n 64; 531 NW2d 659 (1995) (stating that "only actual errors are aggregated to determine their cumulative effect").

Finally, defendant argues that his convictions are against the great weight of the evidence. We disagree. We review a great-weight claim to determine whether "the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result." *People v Lemmon*, 456 Mich 625, 641; 576 NW2d 129 (1998) (quotation marks and citation omitted). A trial court's denial of a motion for new trial is reviewed for an abuse of discretion. *People v Unger*, 278 Mich App 210, 232; 749 NW2d 272 (2008).

Defendant was convicted of CSC III and CSC IV. A person is guilty of CSC III "if the person engages in sexual penetration with another person and . . . [f]orce or coercion is used to

accomplish the sexual penetration." MCL 750.520d(1)(b). As directed by the statute, the phrase "force or coercion is defined in MCL 750.520b(1)(f) and includes, but is not limited to, any of the following circumstances:

> (*i*) When the actor overcomes the victim through the actual application of physical force or physical violence.

> (*ii*) When the actor coerces the victim to submit by threatening to use force or violence on the victim, and the victim believes that the actor has the present ability to execute these threats.

> (*iii*) When the actor coerces the victim to submit by threatening to retaliate in the future against the victim, or any other person, and the victim believes that the actor has the ability to execute this threat. As used in this subdivision, "to retaliate" includes threats of physical punishment, kidnapping, or extortion.

> (*iv*) When the actor engages in the medical treatment or examination of the victim in a manner or for purposes that are medically recognized as unethical or unacceptable.

> (*v*) When the actor, through concealment or by the element of surprise, is able to overcome the victim.

A person is guilty of CSC IV is he or she engages in sexual contact with another person and . . . "[f]orce or coercion is used to accomplish the sexual contact." MCL 750.520e(1)(b). For purpose of CSC IV, the phrase "force or coercion" is defined in the same manner as for CSC III. MCL 750.520e(1)(b)(*i*)-(*v*). We conclude that the facts and circumstances surrounding defendant's sexual penetration of complainant JG and sexual contact with complainant JB establish the element of force or coercion as defined by these statutes.

The statutes expressly provide that the listed circumstances in which force or coercion may be proven are not exhaustive. In *People v Premo*, 213 Mich App 406, 410; 540 NW2d 715 (1996) (citations omitted), a panel of this Court explained that "the Legislature did not limit the definition of force or coercion to the enumerated examples in the statute. Furthermore, the existence of force or coercion is to be determined in light of all the circumstances and is not limited to acts of physical violence." "Coercion," the Court noted, " 'may be actual, direct, or positive, as where physical force is used to compel act against one's will, or implied, legal or constructive, as where one party is constrained by subjugation to other to do what his free will would refuse.' " *Id*., quoting *Black's Law Dictionary* (5th ed). Further, " 'force or coercion' exists whenever a defendant's conduct induces a victim to reasonably believe that the victim has no practical choice because of a history of child sexual abuse or for some other similarly valid reason." *People v Eisen*, 296 Mich App 326, 335; 820 NW2d 229 (2012).

There is no statutory provision or case that addresses the situation of a CPS worker using his position to coerce a parent he is investigating for abuse or neglect into sexual acts. However, this Court has found "force or coercion" established in a teacher-student relationship. In *Premo*,

213 Mich App at 407-410, this Court concluded that the conduct of the defendant, a teacher, who pinched the buttocks of three high school students, constituted coercion for purposes of MCL 750.520e(1)(a). This Court reasoned:

> We believe that defendant's actions constituted implied legal or constructive coercion because, as a teacher, defendant was in a position of authority over the student victims and the incidents occurred on school property. Defendant's conduct was unprofessional, irresponsible, and an abuse of authority as a teacher. Accordingly, we conclude that defendant's conduct in this case is sufficient to constitute coercion under MCL 750.520e(1)(a). [*Premo,* 213 Mich App at 411.]

In *People v Knapp*, 244 Mich App 361; 624 NW2d 227 (2001), the defendant, a practitioner of reiki—an ancient healing art that involves energy centers in the body called chakra and uses various hand positions to activate internal healing powers in patients—instructed the fourteen-year-old complainant alone in a bedroom, resulting in the complainant's touching the defendant's testicles and placing one hand on his stomach. The defendant then placed his hands on the complainant to demonstrate a position. Later, the defendant talked to the complainant about the hand positions and discussed male sexual energy. The defendant asked the complainant to take off his underwear and he did so; the defendant then did the same. The complainant then manipulated the complainant's testicles at the defendant's request (purportedly to promote healthier semen), and the defendant then masturbated while talking about sexual energy and reiki. *Id*. at 366-367. In discussing what constitutes coercion for purposes of CSC II, the Court held that "a defendant's conduct constitutes coercion where, as here, the defendant abuses his position of authority to constrain a vulnerable victim by subjugation to submit to sexual contact." *Id*. at 369. The Court reasoned that the defendant was in a position of authority over the complainant because he was involved in a teacher-student relationship and the complainant was in a position of special vulnerability with respect to the defendant. *Id*. at 371.

Although the coercion in *Premo* and *Knapp* involved teacher-student relationships, the reasoning in those cases is instructive and applicable to this situation. Like in *Premo* and *Knapp*, defendant was in a position of authority over the complainants because he was the CPS worker assigned to investigate the abuse or neglect complaints filed against them individually. Testimony established that CPS has authority to provide services to rectify the risk to a child and to petition the court for removal of a child or termination of parental rights. CPS may also petition to have a child removed from a home if a mother fails to protect her child from an abusive father or boyfriend, which was the situation that caused the complaint to be filed in complainant JG's case. Fear of losing one's child through neglect or abuse proceedings would produce an extreme reaction in most parents. As such, the complainants were "in a position of special vulnerability with respect to the defendant." *Knapp*, 244 Mich App at 371. Moreover, in light of all the circumstances, defendant's actions as a CPS worker, like the teacher in *Premo*, were "unprofessional, irresponsible, and an abuse of authority." *Premo*, 213 Mich App at 411.

With respect to complainant JG, the testimony established that defendant informed her on the first day that if she did not leave her fiancé, her child would be taken away. Defendant rubbed her shoulders and then performed a full body massage that included her groin area. Although defendant asked her if she wanted him to still operate on a professional level and that it

was up to her, he continued the massage, pulled up her sports bra, pulled her shorts down, and digitally penetrated her. Complainant JG testified that she knew he would not stop until he got what he wanted. They then performed oral sex on each other and had intercourse. In light of all the circumstances, *Premo*, 213 Mich App at 410, the evidence established that defendant used his position of authority to manipulate and coerce her to perform the sexual acts with him. Thus, the evidence does not preponderate heavily against the verdict, *Lemmon*, 456 Mich at 641, and the trial court did not abuse its discretion by denying defendant's motion for new trial.

With respect to complainant JB, we note that the jury only convicted defendant of the CSC IV charge, which arose from the sexual contact with her during their initial meeting and acquitted him of the CSC III charges that arose from conduct after the initial meeting. Defendant identified himself as a CPS worker and explained the complaint process. Defendant isolated her, like the defendant in *Knapp*, by requesting her stepdaughter to leave the room. Defendant confided facts about his sister's murder as a result of domestic violence, which upset complainant JB, who had just discussed her marriage and domestic violence with defendant. Defendant then hugged her and rubbed her shoulders, and then her thighs and inner thighs, telling her to let him help her relax. In light of all the circumstances, *Premo*, 213 Mich App at 410, the evidence established that defendant used his position of authority and her emotional response to his domestic violence comments to manipulate and coerce her to accomplish the sexual contact; defendant came in contact with her only because of his status as her CPS worker. Thus, the evidence does not preponderate heavily against the verdict, *Lemmon*, 456 Mich at 641, and the trial court did not abuse its discretion by denying defendant's motion for new trial.

Defendant's reliance on *People v Perkins*, 468 Mich 448; 662 NW2d 727 (2003), is misplaced. In *Perkins*, the defendant "was prosecuted for acts arising from his sexual relationship with the complainant, a sixteen-year-old girl." *Id*. at 450. The defendant, who was a friend of the complainant's family and whose wife was the complainant's basketball coach, was also a deputy sheriff. During the time the complainant and the defendant began having sexual relations, "the complainant regularly babysat for [the] defendant's children, attended church with the family, and, for a time, resided with them." *Id*. On the date of the charged incident, the defendant was on duty in a marked police cruiser when the complainant got into the car with him, talked with him, and then fellated him. *Id*. at 451. The prosecutor argued at the preliminary examination that the defendant was guilty of CSC I through coercion because he was an authority figure and that a child can be psychologically subjugated in that manner. However, the Court noted that "no evidence was presented at the preliminary hearing to support the prosecutor's assertion that the complainant was coerced, in any sense of that term, to fellate defendant on the occasion in question." *Id*. at 454. The Court concluded that the district court did not abuse its discretion by dismissing the CSC I charge because the unrebutted facts indicated that on the date in question the relationship was consensual.

Unlike *Perkins*, where there was no evidence that the defendant used his position as a deputy sheriff to coerce the sexual act, the defendant's initial contacts with the complainants were the result of his position as the CPS worker assigned to investigate the abuse or neglect complaints filed in their respective cases. Moreover, while there was no evidence introduced in *Perkins* that the complainant was coerced, in this case both complainants testified that they only

"consented" to the sexual contact or acts, respectively, because of their fear that defendant would otherwise take their children away.  Thus, *Perkins* does not support defendant's position.

We affirm.

/s/ Jane E. Markey
/s/ Cynthia Diane Stephens
/s/ Michael J. Riordan