# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 13, 2017

Plaintiff-Appellee,

v

No. 330296
Wayne Circuit Court
LC No. 15-005888-01-FC

RALPH ROSAS,

Defendant-Appellant.

Before: O'CONNELL, P.J., and GLEICHER and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his convictions, following a jury trial, of assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84, and armed robbery, MCL 750.529. The trial court sentenced defendant, as a fourth habitual offender, MCL 769.12, to 80 to 120 months' imprisonment for the AWIGBH conviction and 225 to 600 months' imprisonment for the armed robbery conviction. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises out of a stabbing and robbery that occurred during a party at a roller skating rink in Sumpter, Michigan. Christopher Johnson, Anthony Jones, and Daniel Gilliam were security guards at the party. After Johnson attempted to remove one of defendant's friends from the rink, defendant and another person (the "assailant") chased Johnson through the rink parking lot. The assailant had a knife in his hand. At one point, Johnson ran through a crowd that had gathered in the parking lot. While making his way through the crowd, Johnson ran between defendant and the assailant. The assailant stabbed Johnson in the abdomen. Thereafter, defendant and the assailant chased Johnson across a street to a gas station. Gilliam followed them in an attempt help Johnson. However, defendant pulled a gun on Gilliam in the gas station parking lot and demanded that Gilliam hand over all of his money. The assailant also put a knife up to Gilliam's face. The incident was caught on surveillance video. Defendant and the assailant ran off but were apprehended later that night.

## II. DENIAL OF MOTION FOR DIRECTED VERDICT

Defendant argues that the trial court erred when it denied his motion for a directed verdict at the close of the prosecution's case in chief. Defendant contends that the evidence was

-1-

insufficient to allow a rational jury to convict him of either of the alternative charges of assault with intent to murder (AWIM) or AWIGBH on an aiding and abetting theory. We disagree.

"In reviewing a trial court's decision regarding a motion for directed verdict, we review the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Schrauben*, 314 Mich App 181, 198; 886 NW2d 173 (2016) (quotation marks and citation omitted). We consider only evidence presented by the prosecution up to the time the motion for a directed verdict is made. *People v Schultz*, 246 Mich App 695, 702; 635 NW2d 491 (2001), citing *People v Vincent*, 455 Mich 110, 121; 565 NW2d 629 (1997). We are not at liberty to determine the credibility of witnesses, no matter how inconsistent or vague the testimony may be. *Schultz*, 246 Mich App at 702, citing *People v Mehall*, 454 Mich 1, 6; 557 NW2d 110 (1997); *People v Daniels*, 192 Mich App 658, 665; 482 NW2d 176 (1992). Circumstantial evidence and reasonable inferences can establish the elements of the crime. *Schultz*, 246 Mich App at 702.

The elements of AWIM are "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Henderson*, 306 Mich App 1, 9; 854 NW2d 234 (2014) (citation and quotation marks omitted). The elements of AWIGBH are (1) an attempt or threat with force or violence to do corporal harm to another (i.e., an assault), and (2) with the intent to do great bodily harm less than murder. *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014). "A person who aids or abets the commission of a crime may be convicted and punished as if he directly committed the offense." *People v Izarraras-Placante*, 246 Mich App 490, 495; 633 NW2d 18 (2001), citing MCL 767.39. To prove that a defendant aided and abetted in the commission of a crime, such as AWIM or AWIGBH, the jury must find three elements:

> (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement. [*People v Robinson*, 475 Mich 1, 6; 715 NW2d 44 (2006), citing *People v Moore*, 470 Mich 56, 67-68; 679 NW2d 41 (2004).]

Defendant does not challenge the fact that the actions of the assailant satisfied the elements of AWIM and AWIGBH. Specifically, defendant does not deny that the assailant committed an assault with the intent to kill or attempted corporal harm with the intent to do great bodily harm less than murder when he stabbed Johnson in the abdomen with a knife. *Henderson*, 306 Mich App at 9; *Stevens*, 306 Mich App at 628. Therefore, the prosecution met the first element under an aiding and abetting theory because "the crime charged was committed by . . . some other person." *Robinson*, 475 Mich at 6.

Defendant does challenge the second and third elements of aiding and abetting. Defendant claims that, at most, he was merely present at the scene of the crime, and that the prosecution failed to present evidence that he "assisted the commission of the crime."

Additionally, defendant argues there was no evidence that he "intended the commission of the crime or had knowledge that the principal intended its commission." We disagree.

Defendant claims that he was merely present during the commission of the crime, and therefore that a rational jury could not find that the second element under an aiding and abetting theory was fulfilled. "Mere presence, even with knowledge that an offense is about to be committed or is being committed, is insufficient to establish that a defendant aided or assisted in the commission of the crime." *People v Norris*, 236 Mich App 411, 419-420; 600 NW2d 658 (1999) (citation omitted). The evidence, however, shows that defendant was not merely present at the scene, but was much more involved in the commission of the crime. Multiple witnesses testified that defendant, along with the assailant, chased Johnson through the parking lot. As the assailant ran across the tops of parked cars, defendant pursued Johnson at ground level. Moreover, surveillance footage caught the incident on camera, and it showed both defendant and the assailant chasing Johnson around the parking lot. Therefore, defendant was not merely present; rather, the evidence reflects that his actions demonstrably assisted the commission of the crime.

Defendant also argues that he did not intend the commission of the crime, and that he did not have knowledge that the assailant intended to stab Johnson. The evidence demonstrates otherwise. According to Johnson, when defendant and the assailant confronted him in front of the skating rink, the assailant yelled, "I'm going to kill you mother f******." At that time, the assailant had a knife in his hand, which Jones said was of "good size." Immediately thereafter, defendant and the assailant chased Johnson around the parking lot. A rational jury could conclude from the evidence that defendant knew that the assailant intended to kill or seriously injure Johnson with the knife.

Defendant further argues that the prosecution did not present any evidence that the person who stabbed Johnson was with defendant. According to defendant, the assault could have been "committed by someone unassociated with [defendant]." This argument is without merit. Johnson and Jones both identified the assailant in a photographic lineup, and they testified that the assailant was with defendant that night. The assailant's DNA was linked to the knife used to stab Johnson—a knife that was found within a few feet of defendant at the time of his arrest. The testimony at trial and the video evidence of the chase through the parking lot further confirm that defendant and the assailant were working in concert. Thus, the prosecution was able to definitively connect defendant to the person who stabbed Johnson. Viewing the evidence in a light most favorable to the prosecution, the trial court properly submitted the case to the jury on both charges because there was sufficient evidence for a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt on an aiding and abetting theory. *Schrauben*, 314 Mich App at 198.

## III. ADMISSION OF HEARSAY TESTIMONY

Defendant also argues that the trial court abused its discretion when it allowed Detective Corporal John Toth to testify about the substance of his interview with Gilliam on the night of the incident, because it constituted inadmissible hearsay. We disagree that reversal is required based on the admission of this testimony.

This Court reviews a trial court's evidentiary ruling for an abuse of discretion. *People v Green*, 313 Mich App 526, 536; 884 NW2d 838 (2015), citing *People v Orr*, 275 Mich App 587, 588; 739 NW2d 385 (2007). "A trial court abuses its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes." *Green*, 313 Mich App at 531, citing *Orr*, 275 Mich App at 588-589 (quotation marks omitted).

Hearsay is "an unsworn, out-of-court statement that is offered into evidence for the truth of the matter asserted." *People v Musser*, 494 Mich 337, 350; 835 NW2d 319 (2013), citing MRE 801. Hearsay evidence "is generally prohibited and may only be admitted at trial if provided for in an exception to the hearsay rule." *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010), citing MRE 802.

At issue in this case is the excited utterance exception to the hearsay rule, MRE 803, which concerns "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." MRE 803(2). Two elements are required for a statement to meet the exited utterance exception: "(1) there was a startling event, and (2) the resulting statement was made while the declarant was under the excitement caused by that event." *People v Layher*, 238 Mich App 573, 582; 607 NW2d 91 (1999), aff'd 464 Mich 756 (2001), citing *People v Smith*, 456 Mich 543, 550; 581 NW2d 654 (1998). "While the time that passes between the event and the statement is important in determining whether the declarant was still under the stress of the excitement when the statement was made, the focus of the exception is on the declarant's 'lack of capacity to fabricate, not the lack of time to fabricate.' " *Layher*, 238 Mich App at 583, quoting *Smith*, 456 Mich at 551. The trial court has wide discretion in determining whether a declarant is still under the stress of a startling event. *Green*, 313 Mich App at 536, citing *Smith*, 456 Mich at 552.

At trial, the prosecution called Toth to the stand and asked him if he had "an opportunity to speak to a person by the name of Daniel Gilliam." The following colloquy then occurred:

> [*Prosecutor*]: Did you do that on the scene?
>
> [*Toth*]: Yes.
>
> *Prosecutor*: Same day of October 31st?
>
> *Toth*: Yes.
>
> *Prosecutor*: What was [Gilliam's] state at that time when he was speaking to you?
>
> *Toth*: He was excited but at the same time he was fearful.
>
> *Prosecutor*: And in the course of your experience as a [sic] officer have you seen witnesses to be excited or fearful about things?
>
> *Toth*: Yes.

>    *Prosecutor*:   And was his demeanor at that time consistent with your experience in what you have seen in the past?
>
>    *Toth*:   It was very appropriate.
>
>    *Prosecutor*:   And what did [Gilliam] tell you?

Defense counsel then objected to the prosecution's questioning, claiming that Gilliam's statements were hearsay and would not fall under the excited utterance exception to the hearsay rule. The trial court did not expressly rule on the objection, and Toth continued to testify about the substance of the interview with Gilliam. According to Toth, Gilliam described the robbery as follows:

>    [T]he confrontation comes to a head and the gentleman that has a gun who is wearing red demanded his money and he advised that he has a pocket that he keeps regular money in and then he's got a stash money [sic] in a different pocket.
>
>    He advised that he took out a small amount of money and he gave it to him and then the individual said I know you have more and then he went into his right pocket and took more money from him.[1]

Defendant argues that Gilliam's statements constituted inadmissible hearsay because they did not fall under the excited utterance exception to the hearsay rule. MRE 803(2). We agree that Gilliam's statements constituted hearsay because they were out-of-court statements offered for the truth of the matter asserted, i.e., that Gilliam's statements proved that defendant used a gun to rob Gilliam of all of his money—not just the amount defendant believed was rightfully his. But we find it unnecessary to determine whether the trial court abused its discretion in allowing this evidence, because "the admission of a hearsay statement that is cumulative to in-court testimony by the declarant can be harmless error, particularly when corroborated by other evidence." *Gursky*, 486 Mich at 620; see also *People v Duenaz*, 306 Mich App 85, 97; 854 NW2d 531 (2014). Here, Toth's testimony corresponded with what Gilliam had previously testified to at trial. Specifically, Gilliam had already testified that defendant told him to hand over all the money he had, not just the money defendant believed was rightfully his. Additionally, Gottschalk also testified about what Gilliam told her, and defendant neither objected to that testimony nor challenges it on appeal. Finally, Gilliam's testimony was further corroborated by the fact that the surveillance video captured the robbery, and officers recovered a large sum of money at the scene. For these reasons, any error in the admission of Toth's testimony was harmless.

---

[1] The testimony was pertinent to defendant's claim of right defense to the armed robbery charge, i.e., that he had only taken money that he believed was rightfully his.

Affirmed.

/s/ Peter D. O'Connell
/s/ Elizabeth L. Gleicher
/s/ Mark T. Boonstra