*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* PAROLE OF JOHN EMIL HRITZ.

---

MONROE COUNTY PROSECUTING
ATTORNEY,

　　　　　Appellee,

v

JOHN EMIL HRITZ,

　　　　　Appellant,

and

PAROLE BOARD,

　　　　　Intervenor-Appellee.

UNPUBLISHED
August 13, 2020

No.　345782
Monroe Circuit Court
LC No.　17-140569-AP

---

Before:　Ronayne Krause, P.J., and Sawyer and Boonstra, JJ.

Per Curiam.

　　　　Appellant John Hritz (Hritz), appeals as on delayed leave granted the circuit court's order reversing the Parole Board's (the Board) grant of parole.[1]　We reverse and remand.

---

[1] This Court denied Hritz's delayed application for leave to appeal the circuit court's order reversing the Board.　See *In re Parole of John Emil Hritz*, unpublished order of the Court of Appeals, entered November 27, 2018 (Docket No. 345782).　Hritz applied for leave to appeal to our Supreme Court; that Court, in lieu of granting leave to appeal, remanded the case to this Court for consideration as on leave granted.　See *In re Parole of Hritz*, 505 Mich 937; 936 NW2d 289 (2019).

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In 2003, Hritz was incarcerated after pleading guilty to one count of first-degree criminal sexual conduct (sexual penetration with person under 13) (CSC-I), MCL 750.520b(1)(a), and one count of possession of child sexually abusive material, MCL 750.145(c)(2), both counts involving his then-seven-year-old daughter. During his incarceration, Hritz had one misconduct ticket for a nonviolent, non-sexual infraction. Although he did not receive any sex-offender-specific treatment or counseling while in prison, he completed over 50 peer-run self-help classes. To aid the Board in determining whether Hritz should be paroled, the Michigan Department of Corrections (MDOC) evaluated his risk of recidivism using two risk-assessment instruments: "Static-99R" and "Stable-2007," both designed to aid in predicting recidivism in adult sex offenders. Hritz's Static-99R assessment indicated a low risk of reoffending. Hritz's Stable-2007 assessment placed him in the "moderate" recidivism risk category.

On September 22, 2017, Hritz's parole eligibility guidelines were scored and he received a score of +7, after a reduction of two points for the sexual nature of his offense and the fact that it involved an "unusually vulnerable" victim. Under the parole guidelines, Hritz's score of +7 indicated a high probability of parole. A Correctional Offender Management Profiling for Alternative Sanctions (COMPAS) program report was also prepared that evaluated Hritz's risk factors and needs upon release. The report concluded that Hritz had no particular risks or needs, but did note that he had "some antisocial thinking" that may include "moral justification for his criminal behavior" and "minimization of the seriousness or consequences of his criminal activity . . . ."

The Board issued a case summary report in mid-January 2018 concluding that Hritz would be paroled. The report described Hritz's offenses and noted that Hritz had admitted committing them, and also noted that Hritz had refrained from negative conduct while in prison. The report also contained statements from Hritz suggesting that he accepted responsibility for his actions and felt remorse, as well as an explanation of his plans upon release, and his scores on the COMPAS, Static 99R, and Stable 2007 tests.

The Monroe County prosecuting attorney (the prosecutor) filed an application for leave to appeal the Board's decision with the Monroe Circuit Court, asserting that the Board did not have reasonable assurance that Hritz would not become a menace to society or public safety, and that it had rendered its decision without a Transitional Accountability Plan (TAP) in place. After the circuit court granted the prosecutor's application, the Board filed a motion to intervene, which the circuit court granted.

The prosecutor put forward two arguments before the circuit court: (1) that the Board improperly granted parole because it did not provide Hritz with, or take into consideration the lack of, sex-offender treatment and, therefore, did not have reasonable assurances that Hritz would not become a menace to society or public safety once released; and (2) that the Board failed to consider a TAP before deciding whether to grant parole. Both the Board and Hritz responded. The Board argued that: (1) it was required to grant parole unless substantial and compelling reasons existed to deny parole, and no such reasons existed; (2) the sex-offender therapy requirement had been waived for Hritz; and (3) it was not required to consider a TAP before granting parole. Hritz argued that (1) the Board has broad discretion to grant parole and he was presumptively entitled

to parole unless substantial and compelling reasons justified a departure from that rule; (2) contrary to the prosecutor's arguments, the Board could place greater emphasis on Hritz's postconviction conduct than on the conduct of the offense; (3) the Board's credibility determinations were entitled to "exceptional deference" and the circuit court could not substitute its own credibility determinations for those of the Board; and (4) the Board's decision was not an abuse of discretion merely because the prosecutor believed additional therapy was required.

After a hearing on the Board's appeal, the circuit court held that the Board had abused its discretion by granting Hritz parole, and it accordingly reversed that decision. The circuit court stated that it was concerned with the Board's "primary and sole reliance upon 'guidelines' and 'statistical tools' in granting parole," and that there appeared "to be no room for any human element." The circuit court elaborated that it believed the Board had abused its discretion by failing to consider "human tools" such as victim impact statements. Further, the circuit court, in discussing the Board's reliance upon the guidelines and statistical tools to conclude that Hritz was not a menace to society, could not "accept" the Board's decision and stated its belief "that any person of average intelligence would consider [Hritz] to be a deviant pedophile; likely to reoffend." The court also found it unacceptable that Hritz had not received mandatory sex-offender treatment while incarcerated. After questioning the validity of the self-help sex therapy Hritz had engaged in while incarcerated, the circuit court reiterated its conclusion Hritz remained a menace to society, stating, "Defendant is a deviant pedophile; not only raped a child but his own child and videotaped at the same time. Any person of average intelligence would conclude he's a deviant pedophile and is likely to reoffend." Moreover, the circuit court stated its concern with Hritz's failure to fully acknowledge the extent of his wrongdoing. The circuit court also found that the Board was required to consider a TAP for Hritz, and that its failure to do so constituted a violation of regulations.

This appeal followed.

## II.  STANDARD OF REVIEW

"Judicial review of the Board's decision to grant parole is limited to the abuse-of-discretion standard." *In re Parole of Elias*, 294 Mich App 507, 538; 811 NW2d 541 (2011). The circuit court's review of the Board's decision thus was for an abuse of discretion or violation of the law:

> Under MCR 7.104(D)(5) the challenging party has the burden to show either that the Board's decision was "a clear abuse of discretion" or was "in violation of the Michigan Constitution, a statute, an administrative rule, or a written agency regulation." An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes. Importantly, a reviewing court may not substitute its judgment for that of the Board. [*Id*. at 538-539 (citations omitted).[2]]

---

[2] *In re Parole of Elias* quoted MCR 7.104(D)(5) as the relevant court rule. However, MCR 7.104(D)(5) has been renumbered, and the content is now found in MCR 7.118(H)(3). See *In re Parole of Spears*, 325 Mich App at 59.

We review de novo the circuit court's determination that the Board's decision was a clear abuse of discretion. See *In re Parole of Glover (After Remand)*, 241 Mich App 127, 129; 614 NW2d 714 (2000). In doing so, we will not substitute our judgment for that of the Board. *In re Parole of Elias*, 294 Mich App at 538-539. We also review de novo the interpretation of statutes and administrative rules. *Id.* at 538.

## III. ANALYSIS

Hritz argues that the circuit court improperly substituted its judgment for that of the Board in reversing the Board's parole decision. We agree.

MCL 791.233 provides in relevant part:

(1) The grant of a parole is subject to all of the following conditions:

(a) A prisoner must not be given liberty on parole until the board has reasonable assurance, after consideration of all of the facts and circumstances, including the prisoner's mental and social attitude, that the prisoner will not become a menace to society or to the public safety.

(b) [A] parole must not be granted to a prisoner other than a prisoner subject to disciplinary time until the prisoner has served the minimum term imposed by the court less allowances for good time or special good time to which the prisoner may be entitled by statute, except that a prisoner other than a prisoner subject to disciplinary time is eligible for parole before the expiration of his or her minimum term of imprisonment whenever the sentencing judge, or the judge's successor in office, gives written approval of the parole of the prisoner before the expiration of the minimum term of imprisonment.

\* \* \*

(d) [A] parole must not be granted to a prisoner subject to disciplinary time until the prisoner has served the minimum term imposed by the court.

(e) A prisoner must not be released on parole until the parole board has satisfactory evidence that arrangements have been made for such honorable and useful employment as the prisoner is capable of performing, for the prisoner's education, or for the prisoner's care if the prisoner is mentally or physically ill or incapacitated.

\* \* \*

(3) The parole board may promulgate rules under the administrative procedures act of 1969, 1969 PA 306, MCL 24.201 to 24.328, that are not inconsistent with this act with respect to conditions imposed upon prisoners paroled under this act.

The Board has broad, sole discretion over matters of parole. *In re Parole of Elias*, 294 Mich App at 549. "Notwithstanding [this discretion], the Legislature has clearly imposed certain statutory restrictions on the Board's exercise of its discretion." *Id.* Under MCL 791.233(1)(a),

the Board cannot grant a prisoner parole unless it determines that, "after consideration of all of the facts and circumstances, including the prisoner's mental and social attitude, that the prisoner will not become a menace to society or to the public safety." Additionally, our Legislature has tasked MDOC with creating guidelines to implement MCL 791.233(1)(a). See MCL 791.233e(1) (which, at the time of the circuit court's decision to reverse the grant of parole, stated, "The department shall develop parole guidelines that are consistent with [MCL 791.233(1)(a)] and that shall govern the exercise of the parole board's discretion pursuant to [MCL 791.234 and MCL 791.235] as to the release of prisoners on parole under this act. The purpose of the parole guidelines shall be to assist the parole board in making release decisions that enhance the public safety."). At the time of the circuit court's decision at issue, MCL 791.233e(2) and (3) stated:

> (2) In developing the parole guidelines, the department shall consider factors including, but not limited to, the following:
>
> (a) The offense for which the prisoner is incarcerated at the time of parole consideration.
>
> (b) The prisoner's institutional program performance.
>
> (c) The prisoner's institutional conduct.
>
> (d) The prisoner's prior criminal record. As used in this subdivision, "prior criminal record" means the recorded criminal history of a prisoner, including all misdemeanor and felony convictions, probation violations, juvenile adjudications for acts that would have been crimes if committed by an adult, parole failures, and delayed sentences.
>
> (e) Other relevant factors as determined by the department, if not otherwise prohibited by law.
>
> (3) In developing the parole guidelines, the department may consider both of the following factors:
>
> (a) The prisoner's statistical risk screening.
>
> (b) The prisoner's age.

These "[s]tatutorily mandated parole guidelines form the backbone of the parole-decision process." *In re Parole of Elias*, 294 Mich App at 512.

Under the statutory mandate of MCL 791.233e, MDOC created a list of guidelines factors that are scored numerically. See Mich Admin Code, R 791.7716(3). In *In re Parole of Haegar*, 294 Mich App 549, 553; 813 NW2d 313 (2011), this Court explained:

> The Board must determine "whether parole is in the best interests of society and public safety" considering the prisoner's past and current criminal behavior, "[i]nstitutional adjustment," "[r]eadiness for release," "personal history and growth," and "physical and mental health." Mich Admin Code, R 791.7715(2).

Moreover, when a prisoner has a history of "predatory or assaultive sexual offenses," the prisoner must undergo a "psychological or psychiatric evaluation before the release decision is made . . . ." Mich Admin Code, R 791.7715(5).

The DOC regulations further direct the Board to consider "all relevant facts and circumstances, including the prisoner's probability of parole as determined by the parole guidelines . . . ." Mich Admin Code, R 791.7715(1). The guidelines, in turn, require that scoring be based on the prisoner's time served as well as the "aggravating and mitigating circumstances" of the sentencing offense, the "prisoner's prior criminal record," the number of major misconducts committed by the prisoner within the preceding one- and five-year periods, the prisoner's score on "risk screening scales," the prisoner's age, the prisoner's performance in recommended institutional programs, and "[t]he prisoner's mental health" status. Mich Admin Code, R 791.7716(3). [*Id*. at 553-554 (footnote omitted).]

This Court made a similar statement more recently in *In re Parole of Spears*, 325 Mich App 54, 60; 922 NW2d 688 (2018):

Generally, matters of parole lie solely within the broad discretion of the Board. The Board should consider a prisoner's sentencing offense when determining whether to grant parole to a prisoner, but the Board must also look to the prisoner's rehabilitation and evolution throughout his or her incarceration. However, the Legislature has clearly imposed certain statutory restrictions on the Board's exercise of its discretion. Statutorily mandated parole guidelines form the backbone of the parole-decision process.

Caselaw derived from statutory authority holds that the Board may not grant parole unless it has satisfactory evidence that arrangements have been made for employment, for the prisoner's education, or for the prisoner's care if the prisoner is mentally or physically ill or incapacitated. Further, a prisoner shall not be given liberty on parole until the board has reasonable assurance, after consideration of all of the facts and circumstances, including the prisoner's mental and social attitude, that the prisoner will not become a menace to society or to the public safety. [Quotation marks, alterations, and citations omitted.]

"Much like the legislative sentencing guidelines, each parole-guideline section includes a list of factors to be scored and instructions on the point value to be assigned, which include both positive and negative points." *In re Parole of Elias*, 294 Mich App at 517. These scores are added together for a "Final Parole Guidelines Score." *Id*. at 518. After the guideline factors are scored, the "score is then used to fix a probability of parole determination for each individual on the basis of a guidelines schedule. Prisoners are categorized under the guidelines as having a high, average, or low probability of parole." *Id*. If a prisoner's parole guidelines score places him or her in the high-probability category, the Board must "grant parole absent substantial and compelling reasons to depart from that decision." *Id*. at 539. See also MCL 791.233e(6); Rule 791.7716(5).

"[S]ubstantial and compelling" reasons to depart from the parole guidelines are those that "keenly or irresistibly grab" the Board's attention and are "of considerable worth in deciding

whether it should deny parole to a prisoner who was otherwise assessed as having a high chance of parole." *Elias*, 294 Mich App at 542 (citation and quotation marks omitted). However, because subjective factors play a role in the parole decision, the substantial and compelling reasons do not need to be "objective and verifiable . . . ." *Id*. (citation and quotation marks omitted). But, considering the Board's broad discretion, even if objective and verifiable reasons to depart from the parole guidelines exist, "a reviewing court would be more apt to affirm the Board's decision." *Id*. (citation omitted).

Here, Hritz had a "high probability" of parole on the basis of his calculated guideline score. Therefore, the Board was required to grant his parole unless substantial and compelling reasons existed to depart from that rule. MCL 791.233e(6); Rule 791.7716(5). The circuit court did not explicitly articulate how the substantial-and-compelling threshold was satisfied such that the Board should have denied parole. Our review of the circuit court's analysis reveals that the court stated its opposition to, and distrust of, evidence and statistical-based systems and assessments designed to evaluate a prisoner's risk of recidivism. Instead, the circuit court favored a more subjective approach, i.e., consideration of the "human element," on the basis of what appeared to be a gut feeling of whether a prisoner was likely to reoffend. This sort of general grievance with the parole process is best addressed to the Legislature or MDOC in its rulemaking capacity, rather than in the appellate review of an individual prisoner's parole.

Further, in concluding that the Board abused its discretion when granting parole, the circuit court also relied almost exclusively on Hritz's crimes and their effect on the victim. However, while Hritz's crimes were utterly despicable, under MCL 791.233e(2), the offense or offenses that led to incarceration is only one of numerous factors that must be considered in assessing the parole guidelines. Additional factors the Board is required to consider include the prisoner's conduct and program performance while imprisoned. MCL 791.233e(2)(b) and (c). And, under Rule 791.7716(3)(d), statistical screening is one of several factors the Board should consider when scoring a prisoner's parole guidelines. See also MCL 791.233e(3)(a). In other words, contrary to the circuit court's suggestions about overreliance on statistical analysis, the Board was required by statute and regulation to consider statistical risk screening.[3]

Additionally, we agree with Hritz that the circuit court improperly substituted its credibility judgment for that of the Board when it determined that Hritz was "not genuine" when he took

---

[3] Although we render our decision on the basis of the statutes and regulations in effect at the time of the circuit court's review, we note that the Legislature's subsequent amendment of MCL 791.233e arguably indicates our Legislature's intent for the Board to rely *more* on objective criteria, rather than subjective criteria, in its parole decisions. The amended version of MCL 791.233e(1) states that the purpose of the parole guidelines is to "assist the parole board in making objective, evidence-based release decisions that enhance the public safety." Additionally, the amendments allow a departure from the guidelines only for "substantial and compelling objective reasons," and go on to define specific situations in which such reasons exist. See *Bush v Shabahang*, 484 Mich 156, 169-170; 772 NW2d 272 (2009) (citation omitted) ("[A] change in statutory language is presumed to reflect either a legislative change in the meaning of the statute itself or a clarification of the original legislative intent of the statute.").

responsibility for the crime he committed and only told the Board what it wanted to hear. In its case summary report, the Board concluded that Hritz had accepted responsibility for his crimes and cited Hritz's statements to that effect. The circuit court, on the other hand, concluded that Hritz had not accepted responsibility for his crimes. The circuit court appears to have relied on Hritz's psychological report, which noted that Hritz gave a different description of the crimes when compared to the presentence investigation report [PSIR] prepared at sentencing. However, the credibility judgment and factual determination of whether Hritz had accepted responsibility for his crimes was for the Board, not the circuit court, to resolve. See *In re Parole of Elias*, 294 Mich App at 239 ("[A] reviewing court may not substitute its judgment for that of the Board."). Therefore, the trial court improperly substituted its judgment for that of the Board when it concluded that Hritz had not accepted responsibility for his crimes. *Id.*

The prosecutor also argues that the Board's decision to parole Hritz without additional sex-offender specific therapy rendered the Board's grant of parole an abuse of discretion. We disagree. The fact that Hritz did not complete any such programming was the direct result of a decision by the MDOC to waive that requirement for prisoners, such as Hritz, who are deemed a low risk of recidivism. The Board did not abuse its discretion by failing to impose a parole requirement that MDOC had specifically waived for a prisoner. The circuit court improperly substituted its judgment for that of the Board to the extent its decision relied on the fact that Hritz did not complete sex-offender programming while incarcerated. *Id.*

Hritz also argues that, under *In re Parole of Spears*, 325 Mich App at 66, the circuit court erred by stating that the Board had violated its own regulations by failing to have a TAP in place before paroling Hritz. The prosecutor does not address this argument in his brief on appeal, and, in his response to Hritz's application for leave to appeal, conceded that the trial court had so erred. Neither party has elaborated on precisely how *In re Parole of Spears* applies to the circuit court's statement; and because we in any event find that the circuit court improperly substituted its judgment for that of the Board, we decline to address this issue further. See *People v Green*, 313 Mich App 526, 535; 884 NW2d 838 (2015) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority.") (citation and quotation marks omitted).

Reversed and remanded for reinstatement of the order granting parole. We do not retain jurisdiction.

/s/ Amy Ronayne Krause
/s/ David H. Sawyer
/s/ Mark T. Boonstra