*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
March 10, 2022

Plaintiff-Appellee,

v

No. 354783
Kent Circuit Court
LC No. 18-010076-FH

MICHAEL CHARLES LEWIS,

Defendant-Appellant.

Before: RIORDAN, P.J., and K. F. KELLY and SWARTZLE, JJ.

PER CURIAM.

Defendant, Michael Charles Lewis, appeals by right his jury trial convictions of embezzlement by an agent or trustee of more than $20,00 but less than $50,000, and using a computer to commit a crime. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

In 2017, Bradley Brussow and defendant met with representatives from Courtesy Dodge, an automobile dealership, to discuss a potential opportunity to have Brussow's company, Prestige Energy Products, LLC ("Prestige Energy"),[1] install new lighting at the dealership. According to Brussow, defendant, who was Prestige Energy's sales manager, prepared the documents and signed the contract on behalf of Prestige Energy.[2] Courtesy Dodge paid Prestige Energy 75% of

---

[1] Brussow owned Prestige Energy, which he formed in 2017 as a division of Prestige Products, LLC, to provide LED lighting for commercial buildings.

[2] Although admitted at trial, defendant did not provide this Court with a copy of the contract between Prestige Energy and Courtesy Dodge. It is the appellant's duty to provide this Court with all exhibits offered into evidence in his possession, MCR 7.210(C), and this Court may choose to deem an issue waived for failure to provide a necessary record, *People v Callon*, 256 Mich App 312, 332; 662 NW2d 501 (2003). However, we may disregard the appellant's waiver when the missing record is not actually necessary for the Court's review. See *Leelanau Co Sheriff v Kiessel*,

the contract price before the work began, which was deposited into Prestige Energy's bank account.

The project stalled a few months after the work began, causing Robert Jordan, a parts manager for Courtesy Dodge, to contact defendant. Jordan was told by defendant that defendant and Brussow had a falling out and defendant's company, Prestige NRGY Products, LLC ("Prestige NRGY"), would complete the work. Jordan agreed. After the work was completed, Paul Huiber, Courtesy Dodge's Chief Financial Officer, issued a final check for $23,826.26 to Prestige NRGY after defendant sent him payment instructions and a W-9. Defendant never presented the check to Prestige Energy, instead depositing it with Prestige NRGY. After a few months of waiting for final payment on the contract, Brussow contacted Huiber, who informed him that Courtesy Dodge had issued the final check to Prestige NRGY.

Criminal charges were subsequently brought against defendant. After a jury trial, defendant was convicted of embezzlement and using a computer to commit a crime. This appeal followed.

## II. STANDARDS OF REVIEW

This Court reviews de novo whether a criminal defendant was denied his constitutional right to present a defense. *People v Unger*, 278 Mich App 210, 247; 749 NW2d 272 (2008). This Court reviews for an abuse of discretion a trial court's decision to admit or exclude evidence, *People v Jambor*, 273 Mich App 477, 481; 729 NW2d 569 (2007), as well as a trial court's rulings during closing arguments, *People v Lacalamita*, 286 Mich App 467, 472; 780 NW2d 311 (2009). An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

## III. DISCUSSION

Defendant first argues that the trial court denied him a right to present his defense when it sustained the prosecutor's objection during defendant's closing argument. Specifically, defendant asserts the trial court deprived him of the opportunity to argue that he lacked the required specific intent to defraud Brussow when it sustained the objection. We disagree.

During closing arguments, defense counsel argued:

> Now when we're talking about—you've heard the word contract over and over and over. So a contract is an agreement between these two businesses which is Courtesy and originally with Prestige Energy Products. What that contract does is it binds those two parties to perform as agreed in that written document. When Courtesy decided to change course and have Mike's other company, Prestige NRGY finish this job, at that point maybe Courtesy was in breach of the contract

---

297 Mich App 285, 289; 824 NW2d 576 (2012). Because the substance of the contract is not at issue on appeal—defendant argues that Brussow was not able to lay a proper foundation for its admission—we will review the issue.

to Brad. I think it's very marginal at best, but that's the recourse. Brad could file a breach of contract suit against Courtesy and say, hey, wait a minute, that was my contract, you need to pay that $23,000 to me. That's the remedy. But instead, he's done a roundabout here and we're before the court—

The prosecutor objected and, after a bench conference, the trial court instructed the jury as follows:

[T]o the extent there's an argument to you that the remedies here are civil, that you can go out and sue somebody, whatever, and because of that there's not a criminal matter involved, what I'm instructing you here is that the prosecuting attorneys make a decision about whether to charge someone criminally or not. And you can have situations where you can have something that may be both a civil wrong that you could sue somebody about. There could also be a criminal wrong that involves some type of illegal criminal behavior. It happens all the time. But just because you have one that's civil doesn't mean you can't have a criminal situation involving the same dispute.

Now the bottom line here is the prosecutor made the decision to file criminal charges against the defendant. Whether there's a civil claim out there or not really isn't all that relevant. You have to determine whether the elements of the crime of embezzlement as charged with the use of a computer as charged have been proven beyond a reasonable doubt by the prosecuting attorney. And if you believe that they have, you would typically find the defendant guilty. If you believe that he hasn't proven all of the elements of these charges against the defendant, you would find him not guilty.

You should not, however, just make up your mind that because there's a civil remedy this is meaningless, why are we here. We're here because criminal charges have been filed, and your function as a jury is to determine whether the elements of these criminal charges have or have not been met, and that's the law.

After the trial court sustained the prosecutor's objection and after the trial court issued the above instruction, defense counsel argued:

Well, if Mike's intent was to take as much money as he can, why would he direct [Joe Lufkin] to pay a supplier and why would he leave $6,000 in the account, because he could have just deposited the entire amount, put it in his pocket and said nothing to anyone else. And the reason is because this was a legitimate job for Prestige NRGY, and it was handled legitimately.

\* \* \*

No matter how much you spin this and try to piece different pieces together here, the fact is they cannot show Mike intended to embezzle this money. And the reason they can't do it is because he told Robert Jordan exactly what was going on. And if he wanted the job done by him, it was going to be by Prestige NRGY. And if he wanted the job to be done by Prestige Energy Products with Brad, that's fine.

And Robert said, I want you, Mike Lewis and Prestige NRGY to get the job done, not Brad Brussow. There's no intent. He told him. He wanted to go to the general manager and owner and tell them exactly, and he was directed not to by the Courtesy person in charge of this.

Rooted in the Sixth and Fourteenth Amendments to the United States Constitution, criminal defendants have a constitutionally guaranteed right to a "meaningful opportunity to present a complete defense." *Holmes v South Carolina*, 547 US 319, 324; 126 S Ct 1727; 164 L Ed 2d 503, 509 (2006) (quotation marks and citation omitted). "Instructional errors that directly affect a defendant's theory of defense can infringe a defendant's due process right to present a defense." *People v Kurr*, 253 Mich App 317, 326-327; 654 NW2d 651 (2003).

As the record demonstrates, defense counsel continued to make the argument, after the trial court sustained the prosecutor's objection, that defendant lacked the specific intent necessary to convict him of embezzlement. He argued that defendant was entitled to the money, highlighting that, according to Jordan, defendant was forthright about his plans to have Prestige NRGY complete the job. Defendant has not adequately explained how the objection regarding the alternative remedy of a civil suit relates in any way to his defense that he lacked the necessary intent, which relates to defendant's state of mind during the commission of the crime. Whether the prosecutor brought criminal charges or whether Brussow filed a civil suit has no bearing on whether defendant intended to defraud Brussow.

Defendant also argues that, by sustaining the objection, the trial court denied him the opportunity to challenge Brussow's credibility. This argument also lacks merit. The record demonstrates that Brussow's credibility was a primary component of defendant's case-in-chief. Defendant extensively questioned Brussow about Prestige Energy's finances and about the business relationship between Brussow and defendant. Moreover, during closing argument, defense counsel argued:

> Now keep in mind that Prestige NRGY was a business that was operating before this job was done, and this business operates today. It's a legitimate business. This is an LED lighting business that Mike is the CEO of because Mike has expertise in LED lighting and Brad doesn't. And Brad realized that he's the goose that laid the golden egg, and he wanted to force him to stay with him, but he didn't. He left, and that's why Brad is mad, and that's why Brad is motivated, that's why Brad has done what he's done to him by having these charges brought.

It is, therefore, disingenuous for defendant to claim that he was deprived of his opportunity to "effectively" impeach Brussow. Defendant was given an opportunity to question Brussow and attack his credibility. Defendant was able to challenge the veracity of Brussow's statements during cross-examination. To the extent that defendant claims Brussow was a liar and those lies caused the prosecutor to file charges, defendant had a full opportunity to present that defense. But defendant fails to adequately explain how Brussow's decision—at the time—to not file a civil suit

relates to his credibility.[3] The fact that the prosecutor decided to bring charges against defendant-as opposed to Brussow filing a lawsuit—does not bear on defendant's state of mind when he committed the crime.

Next, defendant argues that the trial court deprived defendant of a fair trial when it admitted the contract between Prestige Energy and Courtesy Dodge into evidence because the contract did not satisfy the business-records exception to the hearsay rule. According to defendant, Brussow—the witness that was offered to admit the contract—was not a "custodian" or "other qualified witness." See MRE 803(6). Moreover, defendant argues that the trial court's error was so egregious that it denied him the right to present a fair trial.

"In general, hearsay—an out-of-court statement offered to prove the truth of the matter asserted—may not be admitted into evidence." *People v Green*, 313 Mich App 526, 531; 884 NW2d 838 (2015), citing MRE 801 and MRE 802. However, as relevant here, hearsay is admissible if offered under the "business records exception":

> A memorandum, report, record, or data compilation, in any form, of acts, transactions, occurrences, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, *all as shown by the testimony of the custodian or other qualified witness*, or by certification that complies with a rule promulgated by the supreme court or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. [Emphasis added.]

This exception "is based on the inherent trustworthiness of business records." *Jambor*, 273 Mich App at 482.

Brussow provided the foundation for the admission of the contract. There is no dispute that Brussow was not the "custodian," as he testified that the responsibility fell to others at Prestige Energy. Thus, defendant claims that because Brussow was not present when the contract was signed and "did not know where it came from," he is not an "other qualified witness." However, it is "not necessary that the actual preparer of the business records be present to lay the foundation for the admission of the documents as the testimony of other 'qualified' witnesses [is] sufficient." *People v Safiedine*, 163 Mich App 25, 33; 414 NW2d 143 (1987). Moreover, defendant misconstrues the record by asserting that Brussow did not know where the contract came from.

---

[3] Defendant cites case law regarding jury nullification, but does not otherwise explain its relevance. To the extent he argues he was deprived of the opportunity to argue the defense of jury nullification, he has abandoned that argument. *People v McPhearson*, 263 Mich App 124, 136; 687 NW2d 370 (2004) ("The failure to brief the merits of an allegation of error constitutes an abandonment of the issue.").

Brussow was the owner of Prestige Energy and testified he retrieved the document from the company's electronic system where all of its regularly kept files, created for every job, are stored.

Brussow was qualified to provide a foundation for the admission of the contract under MRE 803(6). Because the trial court did not abuse its discretion when it admitted the contract into evidence, it did not deny defendant a fair trial by doing the same.

Affirmed.

/s/ Michael J. Riordan
/s/ Kirsten Frank Kelly
/s/ Brock A. Swartzle