*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

THOMAS GALNAREZ GONZALEZ,

      Defendant-Appellant.

UNPUBLISHED
December 3, 2019

No. 344946
Lenawee Circuit Court
LC No. 17-018726-FH

Before: CAMERON, P.J., and CAVANAGH and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of third-degree criminal sexual conduct (CSC-III), MCL 750.520d (multiple variables), and assault with intent to commit criminal sexual conduct involving penetration (AWICSC), MCL 750.520g(1). We affirm.

## I. STATEMENT OF FACTS

This case arises out of defendant's sexual assault of the victim at the victim's home. The victim and defendant had known each other for several years and were friendly with each other. One afternoon, the victim saw defendant at the victim's apartment complex when defendant was visiting other residents in the same building. The victim mentioned to defendant that she had recently undergone a major surgery, and asked defendant if he would be willing to assist her with grocery shopping that evening. Defendant agreed. At some point before grocery shopping, the victim had taken Klonopin and Percocet for pain relief as prescribed for her surgical recovery.

Defendant and the victim returned from shopping about midnight and defendant helped the victim bring the groceries inside her apartment before leaving. Between 1:00 a.m. and 1:30 a.m., defendant called the victim, asking if he could return and retrieve the cigarettes he had left at the victim's home. Defendant returned to the home and the two talked in the victim's living room. Between 2:30 a.m. and 2:45 a.m., the victim began feeling groggy and fell asleep. The victim awoke after she felt "a lot of pressure" in her vaginal area. The victim did not know what was causing that pressure: she testified that it was "on the inside" but that she "didn't know if [defendant] penetrated [her] or not." The victim opened her eyes to see that her pants had been removed, and her legs were spread apart and propped up on the sides of the chair. Defendant

was on his knees between the victim's legs, and defendant had his hand under the victim' shirt and bra. The victim kicked defendant away and called the police after defendant left the home.

## II. DISCUSSION

On appeal, defendant argues that (1) offense variable (OV) 4, MCL 777.34, was improperly scored at 10 points, (2) MCL 777.34 and MCL 750.520d are unconstitutionally vague, (3) there was insufficient evidence to sustain his convictions for CSC-III and AWICSC, and (4) the prosecutor committed misconduct.

### A. OV 4 SCORING

Defendant first claims that the evidence presented does not support the trial court's assessment of 10 points for OV 4. Defendant argues that the victim's failure to have a physical or medical examination the night of the sexual assault, or at any point thereafter, precludes the trial court from assessing 10 points under OV 4 for his AWICSC conviction. We disagree.

Generally, this Court reviews de novo whether the trial court properly interpreted and applied the sentencing guidelines. *People v McGraw*, 484 Mich 120, 123; 771 NW2d 655 (2009). And a trial court's findings in support of an individual assessment under the sentencing guidelines are reviewed for clear error. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). However, because defendant's challenge is not preserved for appeal, our review is for plain error affecting substantial rights. See *People v Kimble*, 470 Mich 305, 310-312; 684 NW2d 669 (2004); *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

Under MCL 777.34(1)(a), 10 points are assessed for OV 4 if the victim experienced "[s]erious psychological injury requiring professional treatment[.]" MCL 777.34(1)(a). However, "the fact that treatment has not been sought is not conclusive." MCL 777.34(2). It is necessary to demonstrate that the victim actually suffered psychological harm, not simply "that a *reasonable* person in that situation would have suffered a serious psychological injury." *People v White*, 501 Mich 160, 163; 905 NW2d 228 (2017) (quotation marks and citation omitted). "The trial court may assess 10 points for OV 4 if the victim suffers, among other possible psychological effects, personality changes, anger, fright, or feelings of being hurt, unsafe, or violated." *People v Armstrong*, 305 Mich App 230, 247; 851 NW2d 856 (2014). "The trial court may rely on reasonable inferences arising from the record evidence to sustain the scoring of an offense variable." *People v Earl*, 297 Mich App 104, 109; 822 NW2d 271 (2012).

There was sufficient evidence presented to sustain the trial court's finding that the victim suffered a serious psychological injury requiring professional treatment as a result of the sexual assault. At trial, the victim testified that immediately after the sexual assault she felt violated and emotional. Officer Joshua Perry similarly testified that during their initial contact soon after the sexual assault, the victim was "very emotional," "very upset," "crying through a portion" of their conversation, and appeared "afraid" or "frustrated." At sentencing, the victim delivered a victim-impact statement, stating in relevant part:

> I am still very fearful of going out alone and having to look over my shoulder. And because there has been numerous contacts and altercations with his family, I worry that there's going to be any [sic] repercussions. In fact the day that after we left the verdict, we left the courthouse, one of them called me, and

I'm not going to repeat it because it was pretty disgusting. They all know where I live. I really don't want to go to the extent of getting PPOs because it's just—it would be such a pain.

My nine-year-old granddaughter and I both are still in counseling. She has not forgotten and I don't think she ever will. After that incident and with the help of the Catherine Cobb Center and the equipment that they gave me, the safety measures was [sic] great. But then I had to live in my home like a prisoner on the fact of going out about out [sic] alone and seeing him out there. And he was on a few occasions and had to call the police—had me call. So thank God I had someone with me.

I'm praying to God I will get some closure from this now because the healing is going to be a long process. I just want my life back. Asking is what— my life back the way it used to be.

The victim's sense of being unsafe, her anxiety about leaving her home alone, and her feeling of having been violated are all qualifying psychological injuries that can be considered when assessing OV 4. See *Armstrong*, 305 Mich App at 247. Contrary to defendant's assertions, a trial court is not required to find that professional treatment was sought in order to assess 10 points for OV 4. MCL 777.34(2); see also *People v Waclawski*, 286 Mich App 634, 681; 780 NW2d 321 (2009). Regardless, the victim indicated that she is receiving counseling stemming from this sexual assault, which constitutes such professional treatment. See *People v Davenport (After Remand)*, 286 Mich App 191, 200; 779 NW2d 257 (2009). Assessment under OV 4 concerns psychological injury only. There is no threshold requirement that a victim obtains a physical examination or seeks treatment for physical injuries to be assessed as having experienced serious psychological injury requiring professional treatment for OV 4. Thus, the victim's failure to obtain a physical examination after the sexual assault is irrelevant to the assessment of points for OV 4. Because the victim suffered a serious psychological injury requiring professional treatment, the trial court properly assessed 10 points for OV 4 for the AWICSC conviction.

## B. MCL 777.34 and MCL 750.520d

Defendant next argues that MCL 777.34 and MCL 750.520d are unconstitutionally vague. We disagree.

A constitutional claim must be raised before and addressed by the trial court to be preserved for appellate review. *People v Wiley*, 324 Mich App 130, 150; 919 NW2d 802 (2018). Defendant did not challenge either MCL 777.34 or MCL 750.520d as being void for vagueness before the trial court; therefore, this argument is not preserved for appeal. "Although defendant should have challenged the constitutionality of the statute in the trial court to preserve the issue for appellate review, we may still consider this constitutional question absent a challenge below." *People v Wilson*, 230 Mich App 590, 593; 585 NW2d 24 (1998). "This Court reviews de novo a challenge to a statute's constitutionality under the void-for-vagueness doctrine." *People v Vronko*, 228 Mich App 649, 651-652; 579 NW2d 138 (1998).

Statutes are presumed to be constitutional and are construed accordingly unless their unconstitutionality is clearly apparent. *Id*. at 652. "The party challenging the constitutionality of a statute has the burden of proving the law's invalidity." *People v Bosca*, 310 Mich App 1, 71; 871 NW2d 307 (2015). A statute is unconstitutionally vague if "(1) it does not provide fair notice of the conduct proscribed, (2) it confers on the trier of fact unstructured and unlimited discretion to determine whether an offense has been committed, or (3) its coverage is overly broad and impinges on First Amendment Freedoms." *Vronko*, 228 Mich App at 652. A statute is not unconstitutionally vague when "the meaning of the words in controversy can be fairly ascertained by reference to judicial determinations, the common law, dictionaries, treatises, or their generally accepted meaning." *Id*. at 653. "[A]rguments that a statute is unwise or results in bad policy should be addressed to the Legislature." *People v Kirby*, 440 Mich 485, 493-494; 487 NW2d 404 (1992).

Defendant has failed to demonstrate how MCL 777.34 is unconstitutional. Defendant, citing *Grayned v City of Rockford*, 408 US 104, 108; 92 S Ct 2294; 33 L Ed 2d 222 (1972), argues that MCL 777.34 is void for vagueness because it allows resolution, on a subjective basis by the trial court, of whether serious psychological injury requiring professional treatment occurred to a victim. According to defendant, the ability of a layman, without expertise in psychological treatment, to determine whether a psychological injury requiring treatment occurred allows for arbitrary and discriminatory assessment of points under OV 4. However, when a vagueness challenge does not involve the First Amendment, "the constitutionality of the statute in question must be examined in light of the particular facts at hand without concern for the hypothetical rights of others." *Vronko*, 228 Mich App at 652. "The proper inquiry is not whether the statute may be susceptible to impermissible interpretations, but whether the statute is vague as applied to the conduct allegedly proscribed in this case." *Id*.

The victim testified and reported that she experienced serious psychological injuries and is attending counseling as a result of defendant's sexual assault. The trial court was not required to determine whether the victim's serious psychological injury required professional treatment, because the evidence presented demonstrated that she was, in fact, already receiving such treatment. Therefore, MCL 777.34 was not unconstitutionally vague as applied to defendant.

Defendant further claims that MCL 750.520d is unconstitutionally vague. Specifically, defendant asserts that "penetration" or "intrusion" as used in MCL 750.520d are unconstitutionally vague, but fails to explain how defendant lacked adequate notice that his conduct was a criminal offense or how it confers on the jury unlimited discretion to determine whether an offense was committed. Nor does defendant cite any supporting authority for this challenge. As defendant's claim lacks references to legal authority, defendant has effectively abandoned the issue. See *People v Piotrowski*, 211 Mich App 527, 530; 536 NW2d 293 (1995).

Even if defendant had cited authority, we would conclude that defendant's argument is not meritorious. Defendant's challenge for vagueness must be evaluated with regard to the conduct allegedly proscribed in this case. See *Vronko*, 228 Mich App at 652. The charge against defendant included the allegation that he sexually penetrated the victim's labia. "To determine whether a statute is void for vagueness, a court examines the entire text of the statute and gives the statute's words their ordinary meanings." *People v Piper*, 223 Mich App 642, 646; 567 NW2d 483 (1997). "Sexual penetration" is clearly defined in MCL 750.520a(r) as "sexual

intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." MCL 750.520a(r). This Court has provided legal definitions of "penetration" and "intrusion" on ample occasions. See, e.g., *People v Lockett*, 295 Mich App 165, 188; 814 NW2d 295 (2012) (defining "penetration" legally as any intrusion into the vagina or the labia majora). Further, this Court has confirmed that the use of "genital opening" rather than "vagina" in a previous iteration of MCL 750.520a(r) indicates an intent by the Legislature to include penetration of the labia majora as sufficient to sustain a finding of sexual penetration. *People v Bristol*, 115 Mich App 236, 238; 320 NW2d 229 (1981). Consequently, defendant had adequate notice that his penetration of the victim's labia was prohibited conduct, and a jury did not have unlimited discretion to determine whether defendant's conduct constituted sexual penetration as prohibited under MCL 750.520d.

## C. SUFFICIENCY OF THE EVIDENCE

Defendant initially contends that there was insufficient evidence for a jury to reasonably infer that he engaged in a sexual act with the victim that involved sexual penetration while knowing that she was physically helpless or mentally incapacitated as required for his conviction of CSC-III. We disagree.

In evaluating a challenge to the sufficiency of the evidence, this Court reviews the evidence de novo to assess whether a rational trier of fact could have found the essential elements of the crime were proved beyond a reasonable doubt. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). Evidence is examined in the light most favorable to the prosecution. *Id*. Circumstantial evidence and reasonable inferences derived from such evidence may constitute sufficient proof of the elements of the crime. *Carines*, 460 Mich at 757 (citation omitted).

Defendant was convicted of CSC-III in violation of MCL 750.520d(1)(b) (force or coercion used to accomplish sexual penetration) or MCL 750.520d(1)(c) (victim was mentally incapable, mentally incapacitated, or physically helpless). "A person is guilty of CSC-III if the person engages in sexual penetration with another person and . . . [f]orce or coercion is used to accomplish the sexual penetration." *People v Green*, 313 Mich App 526, 537-538; 884 NW2d 838 (2015). "Force or coercion," as defined by MCL 750.520d(1)(b), includes overcoming a victim through the use of actual physical force or violence, MCL 750.520b(1)(f)(*i*), and overcoming the victim through threats that make the victim afraid of present or future danger, MCL 750.520b(1)(f)(*ii*) and (*iii*). See also *Green*, 313 Mich App at 538. Alternatively, a person is guilty of CSC-III if the person engages in sexual penetration with another person who is mentally incapable, mentally incapacitated, or physically helpless. MCL 750.520d(1)(c); *People v Cox*, 268 Mich App 440, 443; 709 NW2d 152 (2005). A person is "physically helpless" when "unconscious, asleep, or for any other reason is physically unable to communicate unwillingness to an act." MCL 750.520a(m). Mental incapacitation occurs when one is "rendered temporarily incapable of appraising or controlling his or her conduct due to the influence of a narcotic, anesthetic, or other substance administered to that person without his or her consent . . . ." MCL 750.520a(k). Under either provision of CSC-III, "sexual penetration" is defined in pertinent part as "any other intrusion, however slight, of any part of a person's body . . . into the genital or anal

openings of another person's body . . . ." *People v Duenaz*, 306 Mich App 85, 106; 854 NW2d 531 (2014), quoting MCL 750.520a(r).

Defendant claims that the prosecution failed to provide sufficient evidence that he sexually penetrated the victim and that the victim was mentally incapacitated or physically helpless at the time of the sexual encounter. Specifically, defendant argues that the victim repeatedly testified that she was unable to confirm whether or not defendant sexually penetrated her during the sexual assault. The victim was, according to defendant, capable of communicating unwillingness, yet did not do so, and thus cannot be considered to have been physically helpless. Additionally, defendant asserts that the victim was not mentally incapacitated, as defined under MCL 750.520a(k), because of the voluntary ingestion of Klonopin or Percocet by the victim.

There was sufficient evidence that defendant engaged in sexual penetration with the victim while she was physically helpless. While the victim testified that she "didn't know if [defendant] penetrated [her] or not," the victim repeatedly stated that she awoke after she felt "a lot of pressure" that "hurt" from her vaginal area. She testified that the pressure was "on the inside" and that, while she did not see the source of the pressure, she knew "[i]t was coming from down in my vagina." Viewed in the light most favorable to the prosecution, a reasonable inference could be made that defendant penetrated the victim and that was the source of the pressure experienced by the victim. See *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (stating that circumstantial evidence and reasonable inferences arising from such evidence may be acceptable proof of the elements of a crime).

The victim's testimony also included descriptions of her lack of alertness at the time of the sexual assault. The victim noted that:

> *Q*. Okay. So you said—how did you know at that point that you passed out? Sometimes if we're sleeping, we don't know we're sleeping because we're unconscious. How did you know?
>
> *A*. I got started feeling really groggy and kind of funny and just, you know, real limber and loose and stuff. And I just relaxed out in the chair and just whatever it was, it was. I mean, I just—
>
> *Q*. Fell asleep?
>
> *A*. I don't know how to describe it. I mean, I just got really extremely relaxed and tired and I just fell asleep.
>
> *Q*. Okay. What is the next thing you remember after falling asleep?
>
> *A*. The next thing I remember is opening my eyes and my pants were off and [defendant] was between my legs and he had his hand up under my shirt on my breast.

The reason for the victim's unconscious state is open to several possible determinations on the basis of the record. Before grocery shopping with defendant, the victim took Klonopin and

Percocet as prescribed for her postsurgical pain relief. The victim estimated that she passed out in the late morning hours, between 2:30 a.m. and 2:45 a.m. The evidence presented was sufficient for a jury to find that the victim passed out because of the medications she ingested or had fallen asleep. See *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). Regardless of whether the victim lost consciousness because of the medications or from falling asleep, a rational trier of fact could conclude that the victim was "physically unable to communicate an unwillingness to act" at the time of the assault. MCL 750.520a(m).

Defendant claims that the victim appeared awake during the sexual encounter, and that he did not think that the victim was "out of it." However, defendant admitted that he was aware that the victim had taken pain relievers as a result of her surgery. Because defendant witnessed the victim's behavior both before and during her period of unconsciousness, and knew that the victim had ingested pain relievers that day, the jury could reasonably infer that defendant knew or had reason to know that the victim was physically helpless at the time defendant initiated the assault. See *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008). On the basis of the evidence presented, a jury could have found that the victim lost consciousness and that defendant was aware of the victim's mental and physical state. It is the jury's duty to assess the weight and credibility of witnesses and evidence, and to determine the weight allocated to any inferences. *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013). Therefore, the evidence presented supports a determination that defendant sexually penetrated the victim with knowledge of her physical helplessness as required to sustain his CSC-III conviction.

Defendant next contends that there was insufficient evidence for a jury to reasonably infer that he engaged in a sexual act with the victim that involved sexual penetration, and that such evidence is required to sustain defendant's conviction of AWICSC. We disagree.

"[T]he elements of assault with intent to commit CSC involving penetration are simply (1) an assault, and (2) an intent to commit CSC involving sexual penetration." *People v Nickens*, 470 Mich 622, 627; 685 NW2d 657 (2004). An assault can arise in one of two forms: (1) an attempt to commit a battery, or (2) an unlawful act which places one in reasonable apprehension of receiving an imminent battery. *Id.* at 628. "[W]hen one attempts an intentional, unconsented, and harmful or offensive touching of a person, one has committed an assault." *People v Starks*, 473 Mich 227, 234; 701 NW2d 136 (2005). "[A]ssault with intent to commit criminal sexual conduct involving sexual penetration can be distinguished from attempted third-degree criminal sexual conduct by the proximity of the defendant to the completed act." *Id.* at 236 (quotation marks and citation omitted).

Defendant contends that the evidence was insufficient to demonstrate that he sexually penetrated the victim as required to sustain his conviction of AWICSC. As previously determined, the evidence presented was sufficient for a jury to find that sexual penetration had occurred. Furthermore, defendant's argument incorrectly states the elements of AWICSC. Actual sexual penetration is not required to commit AWICSC. Rather, any attempted "intentional, unconsented, and harmful or offensive touching of a person" satisfies the element of assault in AWICSC. *Id.* at 234. Defendant admitted that he wanted to have sex with the victim, and that his intention when tapping the victim with his penis was "to arouse her." Therefore, the evidence presented supports a determination that defendant intentionally, and without consent,

made an offensive contact with the victim with the intent to commit CSC involving penetration as required for an AWICSC conviction.

## D. PROSECUTORIAL MISCONDUCT

Finally, defendant claims that the prosecution engaged in misconduct by coaching the victim's testimony and encouraging her to describe the contact made by defendant as sexual penetration. Defendant's argument implies that without the victim's improperly induced testimony, the prosecution presented insufficient evidence of whether defendant sexually penetrated the victim as required for CSC-III and AWICSC. We disagree.

When evaluating allegations of prosecutorial misconduct, the test is whether a defendant was denied a fair and impartial trial. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *Id*. at 64.

"Review of alleged prosecutorial misconduct is precluded unless the defendant timely and specifically objects, except when an objection could not have cured the error, or a failure to review the issue would result in a miscarriage of justice." *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003). Defendant did not timely and specifically object; therefore, the issue of prosecutorial misconduct is not preserved for appeal and our review is for plain error that affected his substantial rights. See *People v Aldrich*, 246 Mich App 101, 110; 631 NW2d 67 (2001).

Defendant solely highlights one instance of alleged coaching by the prosecutor, which occurred during the direct examination of the victim:

*Q.* [The victim], right before we broke we were talking about that moment when you woke up at first and noticed—you said you woke up to the feeling of penetration—or excuse me, pressure. Do you understand what we were talking about?

*A.* Yes, ma'am.

*Q.* Okay. And I would like you to describe, just so that I can understand what your definition of pressure means, what did it feel like to you?

*A.* It was—it was pressure inside, like it was something real heavy. It was like, I don't know how to describe it, but it was inside, it wasn't on the outside, it was inside. It felt real heavy, heavy pressure—

*Q.* Okay.

*A.* —and that's what woke me up. Because having surgery on my stomach and stuff and I felt that pressure, I thought maybe it was something with my stomach. And then when I realized it wasn't and he was in the position that he was in, something else was going on that I felt this heavy, heavy pressure on the inside.

*Q*. Okay. And it was enough pressure to wake you up out of your sleep?

*A*. Yes, ma'am.

*Q*. And you maintain, though, that you don't know what was—what was causing that pressure inside?

*A*. I don't know.

Examined in context, the prosecutor's use of the word "penetration" appears to be inadvertent. The prosecutor was refreshing the victim as to the victim's own testimony in direct examination just before the court's recess. Immediately after the use of the word "penetration," the prosecutor corrected herself and used the word "pressure," which is the terminology the victim repeatedly used in describing her experience of the assault earlier in her testimony. After this inadvertent and solitary mention of "penetration," the prosecutor asked the victim to explain "what [the victim's] definition of pressure means" and questioned the victim to confirm that the victim did not know "what was causing that pressure inside." Moreover, the prosecutor did not use the term "pressure" in her questioning until after the victim first used it to describe what awoke her on the evening of the assault. Nor is there any indication that the use of the word "penetration" induced any coached testimony from the victim, because the victim indicated both before and after the prosecutor's use of the word "penetration" that the victim was unsure of the source of the pressure in her vaginal area. There was no prosecutorial misconduct in this instance of inadvertent misspeaking. Additionally, the trial court instructed the jury at the beginning and end of the trial that the prosecutor's questions are not evidence. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). Therefore, defendant has failed to establish plain error affecting his substantial rights. See *Carines*, 460 Mich at 763.

In summary, there was sufficient evidence to support the trial court's assessment of 10 points for OV 4, and defendant has failed to demonstrate that either MCL 777.34 or MCL 750.520d are unconstitutionally vague. There was also sufficient evidence to sustain defendant's convictions of CSC-III and AWICSC. Further, defendant failed to establish his prosecutorial misconduct claim.

Affirmed.

/s/ Thomas C. Cameron
/s/ Mark J. Cavanagh
/s/ Douglas B. Shapiro