*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RYAN CHRISTOPHER PURDY,

        Defendant-Appellant.

UNPUBLISHED
November 30, 2023

No. 359143
Tuscola Circuit Court
LC No. 21-015349-FC

Before: O'BRIEN, P.J., and K. F. KELLY and M. J. KELLY, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of six counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(f) ("[t]he actor causes personal injury to the victim and force or coercion is used to accomplish sexual penetration"); and three counts of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(b) ("[f]orce or coercion is used to accomplish the sexual penetration"). He was sentenced to 15 to 30 years' imprisonment for each of his CSC-I convictions and 10 to 15 years' imprisonment for each of his CSC-III convictions. We affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

When the victim was 11 years old, defendant moved into a home next door to the victim's family. Defendant, who was about 37 years old at the time, quickly became an authority figure in the victim's life. Eventually, the victim's mother, SL, began a relationship with defendant, which ultimately resulted in defendant, the victim, SL, and the victim's younger brother, NL, living together. Shortly after the victim turned 16 years old, defendant began sexually assaulting her. During each instance of sexual assault, which occurred about one or two times per week, defendant would penetrate the victim's vagina orally, digitally, and with his penis.

To accomplish this abuse, defendant employed a system of manipulation and control over the victim. Defendant relied on his position as an authority and father-figure in the victim's life. If the victim refused to participate in the sexual activities, defendant would aggressively and abrasively scream at her, including the use of derogatory words. Although they did not fully understand the context of the arguments, two witnesses overheard defendant use derogatory

language toward the victim during an argument. In addition to verbally berating the victim, defendant also threatened to take away the victim's personal belongings if she did not continue the relationship. Defendant told the victim that he would take away the saddle he bought that she used to ride horses as well as her cell phone and automobile, both of which were in defendant's name. Defendant also had access to the victim's cell phone, which he used to track all of her text messages. Lastly, defendant threatened to leave the household if the victim did not allow him to sexually penetrate her. This included leaving SL and NL, who the victim believed were financially reliant on defendant. In effect, the victim thought defendant would cause SL, NL, and the victim to become homeless if the sexual activities did not continue.

The sexual assaults continued regularly until shortly before the victim turned 21 years old. Eventually, after going to an equestrian college in West Virginia, the victim told her boyfriend, Joshua Little, about the sexual assaults. Little spoke with defendant on the telephone and claimed that defendant admitted his sexual relations with the victim began when she was 15 years old. The victim made a report to police, also claiming she was 15 years old at the time of the assaults. The victim tied her age to an event where she got in trouble for spending time in a car with a boy, presumably engaging in sexual acts. On the basis of that information, defendant initially was charged and bound over on 58 counts of CSC, 29 each for CSC-I and CSC-III. Of those, 40 counts were related to the victim's age being under 16 years old at the time of the assaults. The remaining 18 charges pertained to defendant using force or coercion to accomplish the sexual assaults, and for CSC-I, the victim suffering a personal injury.

At trial, the victim's father, JL, testified that he believed the victim was 16 years old at the time she got in trouble for the incident involving her in a car with a boy. JL stated that he made a police report. After obtaining the report in the middle of trial, the prosecution discovered that the event at issue took place shortly after the victim's 16th birthday. The victim was recalled as a witness, she clarified she made a mistake, cited her trauma as a reason for the error, and agreed she must have been 16 years old when the sexual assaults began. The prosecution dropped the 40 CSC charges that relied on the victim's age, but proceeded on the remaining counts, which were charged in the alternative. Defendant's strategy at trial relied heavily on undermining the prosecution's case by implying that the error about the victim's age should cause the jury to doubt all of the evidence. Defendant did not dispute that there was a sexual relationship between himself and the victim. Instead, the defense's argument was that the relationship was consensual. Defendant was convicted and sentenced as previously stated.

This appeal followed. While the appeal was pending, defendant moved the trial court for a new trial. Defendant argued that the prosecutor committed misconduct, the trial court erroneously instructed the jury, and his counsel was ineffective for failing to object to those errors. The prosecution argued to the contrary, and the trial court agreed and entered an order denying the motion.

-2-

## II. PROSECUTORIAL MISCONDUCT[1]

Defendant argues that the prosecutor committed misconduct warranting a new trial because the prosecutor failed to correct Little's false testimony. We disagree.

### A. PRESERVATION

In cases alleging prosecutorial misconduct, issues are "preserved by contemporaneous objections and requests for curative instructions . . . ." *People v Mullins*, 322 Mich App 151, 172; 911 NW2d 201 (2017) (quotation marks and citation omitted). Defendant did not object to the alleged prosecutorial misconduct or request a curative instruction. Therefore, this issue is not preserved for our review. *Id.*

### B. STANDARD OF REVIEW

When preserved, "[c]laims of prosecutorial misconduct are generally reviewed de novo to determine whether the defendant was denied a fair trial." *People v Dunigan*, 299 Mich App 579, 588; 831 NW2d 243 (2013). "However, we review unpreserved constitutional issues for plain error affecting substantial rights." *People v Burkett*, 337 Mich App 631, 635; 976 NW2d 864 (2021) (quotation marks and citation omitted). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To show that a defendant's substantial rights were affected, there must be "a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id.* "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *People v Randolph*, 502 Mich 1, 10; 917 NW2d 249 (2018) (citation omitted).

### C. LAW AND ANALYSIS

The prosecutor did not commit misconduct because she had no duty to correct Little's testimony under the circumstances.

"Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *People v Anderson*, 331 Mich App 552, 565; 953 NW2d 451 (2020) (quotation marks and citation omitted). "Generally,

---

[1] "As this Court recently noted . . . , although the term 'prosecutorial misconduct' has become a term of art often used to describe any error committed by the prosecution, claims of inadvertent error by the prosecution are better and more fairly presented as claims of 'prosecutorial error,' with only the most extreme cases rising to the level of 'prosecutorial misconduct.' " *People v Jackson (On Reconsideration)*, 313 Mich App 409, 425 n 4; 884 NW2d 297 (2015) (quotation marks and citation omitted).

'[p]rosecutors are accorded great latitude regarding their arguments and conduct,' " but there are limits. *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995) (citation omitted).

This Court has explained:

> It is well settled that a conviction obtained through the knowing use of perjured testimony offends a defendant's due process protections guaranteed under the Fourteenth Amendment. If a conviction is obtained through the knowing use of perjured testimony, it must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. Stated differently, a conviction will be reversed and a new trial will be ordered, but only if the tainted evidence is material to the defendant's guilt or punishment. Thus, it is the misconduct's effect on the trial, not the blameworthiness of the prosecutor, which is the crucial inquiry for due process purposes. The entire focus of our analysis must be on the fairness of the trial, not on the prosecutor's or the court's culpability. [*People v Bass*, 317 Mich App 241, 272-273; 893 NW2d 140 (2016) (citation omitted).]

In addition to the prohibition against using false testimony, "a prosecutor has an *affirmative duty* to correct patently false testimony, especially when that testimony conveys to the jury an asserted confession from the defendant." *People v Brown*, 506 Mich 440, 446; 958 NW2d 60 (2020) (quotation marks and citation omitted). "The responsibility 'does not cease to apply merely because the false testimony goes only to the credibility of the witness.' " *People v Smith*, 498 Mich 466, 476; 870 NW2d 299 (2015), quoting *Napue v Illinois*, 360 US 264, 269; 79 S Ct 1173; 3 L Ed 2d 1217 (1959). "A new trial is required if the uncorrected false testimony could . . . in any reasonable likelihood have affected the judgment of the jury." *Brown*, 506 Mich at 447 (quotation marks and citation omitted; alteration in original). "As the appellant . . . defendant bore the burden of furnishing the reviewing court with a record to verify the factual basis of any argument upon which reversal was predicated." *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000). More specifically, as related to the particular claims made by defendant, he has the "burden of demonstrating that [the challenged] testimony was actually false . . . ." *Bass*, 317 Mich App at 274.

Defendant contends that the prosecutor was required but failed to correct the false testimony by Little. One of the primary issues disputed during the trial was the victim's age when defendant began his sexual relationship with her. The victim tied the beginning of the assaults with a time shortly after she got caught in a car with a boy. The victim believed the event occurred around her 15th birthday. This led to 20 charges of CSC-I and 20 charges of CSC-III related to the victim being under 16 years old when she was assaulted. At trial, it was discovered that the event related to the boy in the car occurred shortly after the victim's 16th birthday. As a result, the 40 charges referenced above were dismissed on the record before the jury.

The victim's testimony, however, was not the only evidence elicited from the prosecution regarding her age when defendant began sexually assaulting her. When Little testified, he recalled speaking to defendant over the telephone after the victim told Little about the assaults. Little recorded a portion of the telephone call, but not all of it. He testified that, before he started the recording, defendant admitted he began his sexual relationship with the victim when she was 15

years old. Little attempted to get defendant to repeat the statement once the recording started but defendant did not. While the charges related to the victim's age were dismissed, the prosecution did not do anything to correct Little's testimony. Defendant contends that this was misconduct warranting reversal of his convictions and a new trial.

Defendant's argument is premised on the idea that Little's testimony about what defendant said on the telephone was false. Defendant has the burden of proving the testimony was false. *Bass*, 317 Mich App at 274. For this proof, defendant cites to the fact that the victim was 16 years old when the assaults began, which is no longer in dispute. While that fact disproves a portion of the victim's testimony—specifically that she was 15 years old at the time—it does not definitively disprove Little's testimony. This is because Little did not testify the victim was 15 years old when the assaults began. Instead, Little testified that defendant told him that he began his sexual relationship with the victim when she was 15 years old. The difference is not merely semantic; as noted by the prosecution, it is entirely possible that defendant truly believed and said that the victim was 15 years old when the sexual assaults started. As noted, the victim believed she was that age at the time by referencing an incident when she got in trouble for being in a car with a boy. The victim's mother, SL, also testified that the victim was 15 years old when the event with the boy in the car occurred. While JL initially thought the victim was 16 years old at the time, he did not insist on it when questioned about whether he could be mistaken. Therefore, it is possible that defendant was under the same mistaken belief when he spoke with Little, and as a result, Little was telling the truth when he testified about what he was told by defendant.

Briefly, the prosecutor only has a duty to correct false testimony "when it should be obvious to the Government that the witness' answer, although made in good faith, is untrue . . . ." *Smith*, 498 Mich at 477 (quotation marks and citation omitted). Explained in other words, a prosecutor must correct "*patently false* testimony." *Brown*, 506 Mich at 446 (emphasis added). As discussed, defendant has only identified evidence establishing that the victim was not 15 years old when she was first sexually assaulted by defendant. Defendant has failed to prove that he did not tell Little that the sexual relationship began when the victim was 15 years old, as he must do to be entitled to relief. Therefore, the alleged false nature of Little's testimony was not "obvious" to the prosecutor, and it certainly was not "patently false." *Smith*, 498 Mich at 477; *Brown*, 506 Mich at 446. Consequently, under the relevant caselaw, the prosecutor did not err, plainly or otherwise, by failing to correct Little's testimony. *Smith*, 498 Mich at 477; *Burkett*, 337 Mich App at 635.[2]

---

[2] Defendant alternatively argues that his trial counsel provided ineffective assistance by failing to object to Little's false testimony. For the reasons explained, however, any such objection would have been futile. "Defense counsel is not ineffective for failing to advance a meritless or frivolous argument." *People v Leffew*, 508 Mich 625, 638; 975 NW2d 896 (2022). Defendant also argues that his trial counsel provided ineffective assistance because his trial counsel did not argue that Little's false testimony "cast doubt on all of [Little's] testimony." Decisions concerning which arguments to present to the jury are plainly matters of trial strategy, and this Court will not second-guess counsel on matters of trial strategy. See *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008).

## III. SUFFICIENCY OF THE EVIDENCE

Defendant argues that there was insufficient evidence to sustain his convictions of CSC-I and CSC-III. We disagree.

### A. STANDARD OF REVIEW

"We review de novo a challenge on appeal to the sufficiency of the evidence." *People v Henry*, 315 Mich App 130, 135; 889 NW2d 1 (2016) (quotation marks and citation omitted). "To determine whether the prosecutor has presented sufficient evidence to sustain a conviction, we review the evidence in the light most favorable to the prosecutor and determine 'whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt.' " *People v Smith-Anthony*, 494 Mich 669, 676; 837 NW2d 415 (2013), quoting *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015) (quotation marks and citation omitted).

### B. LAW AND ANALYSIS

There was sufficient evidence to sustain defendant's convictions of CSC-I and CSC-III.

There is sufficient evidence for a guilty verdict where "a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *Tennyson*, 487 Mich at 735. "The prosecution need not negate every reasonable theory of innocence; instead, it need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant." *People v Mikulen*, 324 Mich App 14, 20; 919 NW2d 454 (2018). "Circumstantial evidence and the reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime." *People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016). Any and all conflicts that arise in the evidence must be resolved "in favor of the prosecution." *Mikulen*, 324 Mich App at 20. "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002).

Defendant challenges the sufficiency of the evidence related to all of his convictions. Defendant's six CSC-I convictions were under MCL 750.520b(1)(f). "[A]n actor may be found guilty under MCL 750.520b(1)(f) if the actor (1) causes personal injury to the victim, (2) engages in sexual penetration with the victim, and (3) uses force or coercion to accomplish the sexual penetration." *People v Nickens*, 470 Mich 622, 629; 685 NW2d 657 (2004). Defendant's three convictions of CSC-III were under MCL 750.520d(1)(b). "A person is guilty of CSC–III 'if the person engages in sexual penetration with another person and . . . [f]orce or coercion is used to accomplish the sexual penetration.' " *People v Green*, 313 Mich App 526, 537-538; 884 NW2d 838 (2015), quoting MCL 750.520d(1)(b). The only element challenged by defendant in this appeal is whether the prosecution adequately proved that defendant used force or coercion to accomplish the sexual penetration, which is an element for both CSC-I and CSC-III as charged in this case. *Nickens*, 470 Mich at 629; *Green*, 313 Mich App at 537-538.

The term "force or coercion" is defined the same whether addressing CSC-I or CSC-III. MCL 750.520b(1)(f); MCL 750.520d(1)(b). Indeed, "[a]s directed by th[e] [CSC-III] statute, the

phrase 'force or coercion' is defined in MCL 750.520b(1)(f)," which is the corresponding CSC-I statute. *Green*, 313 Mich App at 538. The statute defines the phrase in the following manner:

Force or coercion includes, but is not limited to, any of the following circumstances:

(*i*) When the actor overcomes the victim through the actual application of physical force or physical violence.

(*ii*) When the actor coerces the victim to submit by threatening to use force or violence on the victim, and the victim believes that the actor has the present ability to execute these threats.

(*iii*) When the actor coerces the victim to submit by threatening to retaliate in the future against the victim, or any other person, and the victim believes that the actor has the ability to execute this threat. As used in this subdivision, "to retaliate" includes threats of physical punishment, kidnapping, or extortion.

(*iv*) When the actor engages in the medical treatment or examination of the victim in a manner or for purposes that are medically recognized as unethical or unacceptable.

(*v*) When the actor, through concealment or by the element of surprise, is able to overcome the victim. [MCL 750.520b(1)(f).]

"The statutes expressly provide that the list of circumstances in which force or coercion may be proved is not exhaustive." *Green*, 313 Mich App at 539. Given the open-ended nature of the statutory language, this Court provided the following definition in *Green*:

In *People v Premo*, 213 Mich App 406, 410; 540 NW2d 715 (1995), a panel of this Court explained that "the Legislature did not limit the definition of force or coercion to the enumerated examples in the statute. Furthermore, the existence of force or coercion is to be determined in light of all the circumstances and is not limited to acts of physical violence." (Citations omitted.) "Coercion," the Court noted, " 'may be actual, direct, or positive, as where physical force is used to compel act against one's will, or implied, legal or constructive, as where one party is constrained by subjugation to other to do what his free will would refuse.' " *Id*. at 410-411, quoting *Black's Law Dictionary* (5th ed). Further, " 'force or coercion' exists whenever a defendant's conduct induces a victim to reasonably believe that the victim has no practical choice because of a history of child sexual abuse or for some other similarly valid reason." *People v Eisen*, 296 Mich App 326, 335; 820 NW2d 229 (2012). [*Green*, 313 Mich App at 539.]

In the present case, the victim met defendant when she was only 11 years old. Defendant moved in next door to the victim's family. Defendant lived with Jodi Scott, who had a daughter near the victim's age. The victim spent time at defendant's home while befriending Scott's daughter. Testimony established that defendant was an authority and father-figure in the victim's life almost immediately. Indeed, in 2011, when the victim was only 13 years old, defendant

became irrationally upset when a boy came to visit the victim while she was at defendant's house. According to Scott, defendant did not show the same concern for NL.

With that preexisting relationship in place, defendant's role in the victim's life only increased when he began dating SL and moved into the victim's home. The victim testified that she viewed defendant as a father-figure in her life. While SL claimed that the discipline and rules would always come through her, other witnesses suggested that it was defendant who was parenting and controlling the victim. When the victim turned 16 years old, she got in trouble for being in a car with a boy, presumably engaging in consensual sexual activities. According to the victim, she was surprised when defendant was more upset than SL or JL. Afterward, defendant told the victim that he was upset he was not her "first." The victim thought that the statement was improper, and it made her uncomfortable.

Shortly after defendant made this comment, defendant engaged in sexual penetration with the victim for the first time. The victim was clear throughout trial that she did not ever want to have sexual relations with defendant. Instead, she felt pressured to do so because of an array of circumstances. The primary issue was defendant's position as an authority figure in the victim's life. He controlled her cell phone, other private property, and eventually her car. When the victim expressed hesitance to have sex with defendant, he would threaten to take those belongings away. Defendant was also verbally aggressive toward the victim. The victim testified that arguments would begin when defendant felt that she was not being responsive enough to his advances. The victim's claim that defendant used derogatory terms when arguing with her was supported by defendant's niece and defendant's sister-in-law, who both heard defendant call the victim derogatory names like "slut," and "whore." The victim knew that pretending to be interested in defendant was the only way to stop these arguments, which made her feel terrible about herself. When the arguments began, the victim knew that the only way to make them stop was to submit to defendant's sexual desires.

Defendant also used his position as the primary breadwinner for the family to coerce the victim into having sexual intercourse with him. According to the victim, defendant would threaten to kick her, SL, and NL out onto the street if she did not continue her relationship with him. The victim testified that she believed SL could not afford to live without defendant, and therefore, she felt forced to continue the sexual relationship. Although SL testified that she could have supported her family on her own, she also agreed that it would have been difficult and she had openly expressed financial concerns in the victim's presence in the past. Simply put, the victim stated that she would not have had any sexual relations with defendant absent all of these various factors.

Defendant argues that the above evidence was insufficient to prove beyond a reasonable doubt that he used force or coercion to accomplish the sexual penetration. Defendant suggests that the record only shows he would ask for his personal and real property to be returned to him if the victim broke off their consensual relationship. This argument by defendant is effectively a reframe of the testimony in a light most favorable to him, which is exactly the opposite of how we must consider the record on appeal. *Hardiman*, 466 Mich at 428. Viewing the evidence in the light most favorable to the prosecution, the record shows defendant used a combination of manipulative, threatening, and abusive behaviors to overcome the victim's ability to refuse his sexual advances. The jury was permitted to consider all of these circumstances when deciding whether defendant used force or coercion to accomplish the sexual penetration. See *Green*, 313 Mich App at 539.

When confronted with concern regarding her personal belongings, threats to the well-being of her family, and the ever-imminent threat of an argument using derogatory and abrasive words, the jury was well-founded in believing that the victim felt entirely unable to stop defendant from having sex with her. Stated differently, there was sufficient evidence to establish force or coercion because " 'defendant's conduct induce[d the] victim to reasonably believe that [she had] no practical choice because of' " the array of threats and manipulation employed by defendant. *Id.*, quoting *Eisen*, 296 Mich App at 335. The victim's testimony plainly established that she was coerced because she felt "constrained by subjugation [] to do what [her] free will would refuse." *Green*, 313 Mich App at 539 (quotation marks and citation omitted). Because there was sufficient evidence for a reasonable juror to conclude beyond a reasonable doubt that defendant used force or coercion to accomplish the sexual penetration of the victim, there was sufficient evidence to sustain defendant's convictions. *Tennyson*, 487 Mich at 735.

## IV. JURY INSTRUCTIONS

Defendant argues that the trial court plainly erred by failing to give a clear instruction regarding the elements of CSC-III as opposed to CSC-I. As defendant concedes on appeal, this issue has been waived.[3] Defendant alternatively argues that his trial counsel provided ineffective assistance by failing to object to the trial court's confusing jury instructions. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

To preserve a claim of ineffective assistance of counsel, a defendant must "move the trial court for a new trial or a *Ginther*[4] hearing," *People v Jackson (On Reconsideration)*, 313 Mich App 409, 431; 884 NW2d 297 (2015), or file "in this Court a motion for remand to the trial court for a *Ginther* hearing," *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). Defendant moved the trial court for a new trial, arguing in part that defense counsel was ineffective. Therefore, this issue is preserved. *Jackson*, 313 Mich App at 431. Despite preserving the issue, because no evidentiary hearing was held, our review is limited to errors apparent on the record. *People v Seals*, 285 Mich App 1, 19-20; 776 NW2d 314 (2009).

## B. LAW AND ANALYSIS

Defendant's constitutional right to the effective assistance of counsel was not violated in this case.

---

[3] After the trial court finished reading the jury instructions, it asked the parties, "So, counsel, have I given the instructions as previously indicated?" Defense counsel responded: "Defense is satisfied." In *People v Kowalski*, 489 Mich 488, 504; 803 NW2d 200 (2011), our Supreme Court held that the defense counsel in that case waived any objection to an erroneous jury instruction by expressly approving the jury instructions on the record. While defendant takes issue with *Kowalski*, he correctly recognizes that this Court is bound by *Kowalski* and that only our Supreme Court can rule that *Kowalski* was wrongly decided. See *People v DeRousse*, 341 Mich App 447, 463 n 7; 991 NW2d 596 (2022).

[4] *People v Ginther*, 390 Mich 436, 442-443; 212 NW2d 922 (1973).

"A defendant's right to counsel is guaranteed by the United States and Michigan Constitutions," and the "right to counsel encompasses the right to the effective assistance of counsel." *People v Muniz*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 355977); slip op at 5 (quotation marks and citation omitted), citing US Const, Am VI; Const 1963, art 1, § 20. "The effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *Muniz*, ___ Mich App at ___; slip op at 5 (quotation marks and citation omitted). The United States Supreme Court has held that "to receive a new trial on the basis of ineffective assistance of counsel, a defendant must establish that 'counsel's representation fell below an objective standard of reasonableness' and that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012), quoting *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "When reviewing defense counsel's performance, the reviewing court must first objectively 'determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.' " *Jackson*, 313 Mich App at 431, quoting *Strickland*, 466 US at 690. "Next, the defendant must show that trial counsel's deficient performance prejudiced his defense—in other words, that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Jackson*, 313 Mich App at 431, quoting *Vaughn*, 491 Mich at 669.

"This Court will not find trial counsel to be ineffective where an objection would have been futile; nor will it second-guess matters of trial strategy." *Ogilvie*, 341 Mich App at 34. "Furthermore, because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *People v Muhammad*, 326 Mich App 40, 63; 931 NW2d 20 (2018) (quotation marks, citation, and alteration omitted).

Defendant contends that defense counsel was ineffective for failing to object to the confusing jury instructions. The first question to consider is whether an objection by defense counsel would have been successful. *Strickland*, 466 US at 690.

"A criminal defendant has the right to have a properly instructed jury consider the evidence against him." *People v Ogilvie*, 341 Mich App 28, 34; 989 NW2d 250 (2022) (quotation marks and citation omitted). "[T]he trial court is required to instruct the jury concerning the law applicable to the case and fully and fairly present the case to the jury in an understandable manner." *People v Montague*, 338 Mich App 29, 37; 979 NW2d 406 (2021) (quotation marks and citation omitted; alteration in original). In other words, "[o]ne of the essential roles of the trial court is to present the case to the jury and to instruct it on the applicable law with instructions that include . . . any material issues, defenses, and theories that are supported by the evidence." *People v Craft*, 325 Mich App 598, 606-607; 927 NW2d 708 (2018) (quotation marks and citation omitted). "Further, when a jury instruction is requested on any theories or defenses and is supported by evidence, it must be given to the jury by the trial judge." *People v Mills*, 450 Mich 61, 81; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995).

Defendant's ineffective-assistance argument centers on his contention that the trial court's instructions were confusing, which led to the jury misunderstanding the elements of the CSC-III charges. As noted above, defendant was charged with nine counts of CSC-I, along with nine

counts of CSC-III as lesser included offenses of the CSC-I charges. The CSC-I charges required the prosecution to prove that the victim suffered a personal injury, while the CSC-III charges did not. Otherwise, the elements of the two crimes were the same. The counts consisted of three allegations each of penile-vaginal, digital-vaginal, and oral-vaginal penetration. The trial court first read the elements of CSC-I with respect to the penile-vaginal penetration:

> The defendant is charged with the crime of [CSC-I]. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:

> First, that the defendant engaged in a sexual act that involved entry into [the victim]'s genital opening by defendant's penis. Any entry, no matter how slight, is enough. It does not matter whether the sexual act was completed or whether semen was ejaculated.

> Second, that the defendant caused personal injury to [the victim].

> Personal injury means bodily injury, disfigurement, chronic pain, pregnancy, disease, loss or impairment of sexual or reproductive organ, or mental anguish. Mental anguish means extreme pain, extreme distress or extreme suffering either at the time of the event or later as a result of it.

> Here are some of the things you may think about in deciding whether [the victim] suffered mental anguish:

> Was [the victim] upset, crying or hysterical during or after the events?

> Did she need psychological treatment?

> Did the incident interfere with [the victim]'s ability to work or lead a normal life?

> Was [the victim] afraid that she or someone else would be hurt or killed?

> Did she feel angry or humiliated?

> Did [the victim] need medication for anxiety, insomnia or other symptoms?

> Did the emotional effects of the incident last a long time?

> Did [the victim] feel scared afterward about the possibility of being attacked again?

> Was the defendant [the victim]'s parent?

> These are not the only things you should think about. No single factor is necessary. You must think about all of the facts and circumstances to decide whether [the victim] suffered mental anguish.

The third element required is that the prosecutor must prove that the defendant used force or coercion to commit the sexual act. "Force or coercion" means that the defendant either used physical force or did something to make [the victim] reasonably afraid of present or future danger.

The trial court then repeated those exact instructions as related to the digital-vaginal and oral-vaginal penetration counts of CSC-I. The following instruction was given after the trial court read all of the elements for the CSC-I charges:

The defendant has also been charged in Counts 21 through 29 with criminal sexual conduct in the first degree, causing personal injury. For each count, you may also consider whether the defendant is guilty of the less serious crime known as [CSC-III] with force or coercion. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:

First, that the defendant engaged in a sexual act that involved either entry into [the victim]'s genital opening by defendant's penis or by finger or fingers or by mouth or tongue. Any entry, no matter how slight, is enough. In regard to the penis, it does not matter whether the sexual act was completed or semen was ejaculated.

Second, that the defendant used force or coercion to commit the sexual act. "Force or coercion" means that the defendant either used physical force or did something to make [the victim] reasonably afraid of present or future danger.

It is enough force if the defendant threatened to get even with [the victim] in the future and [the victim] believed that the defendant had the ability to carry out those threats.

It is enough force if the defendant used force to induce the victim to submit to the sexual act or to seize control of the victim in a manner facilitating commission of the sexual act without regard to the victim's wishes.

As discussed, defendant was convicted of six counts of CSC-I and three counts of CSC-III. The jury-verdict form indicated there were nine charges of CSC-I and an alternative of nine counts of CSC-III as lesser included offenses. For demonstration, a representative portion of the jury-verdict form appears below:

Count No. 22: Criminal Sexual Conduct in the First Degree (Personal Injury)

POSSIBLE VERDICTS: You may return only one verdict on this charge.
    ☐ Not Guilty; or
    ☑ Guilty of Count 22 - Criminal Sexual Conduct in the First Degree (Personal Injury); or
    ☐ Guilty of Count 51 - the less serious crime of Criminal Sexual Conduct in the Third Degree (Force or Coercion)

Count No. 23: Criminal Sexual Conduct in the First Degree (Personal Injury)

POSSIBLE VERDICTS: You may return only one verdict on this charge.
    ☐ Not Guilty; or
    ☐ Guilty of Count 23 - Criminal Sexual Conduct in the First Degree (Personal Injury); or
    ☑ Guilty of Count 52 - the less serious crime of Criminal Sexual Conduct in the Third Degree (Force or Coercion)

Defendant's argument focuses on the paragraph between the instructions regarding CSC-I and CSC-III. Primarily, defendant notes that the trial court indicated, by use of the word "also," that what followed were new allegations of CSC-I against defendant. Defendant has a point, in that the trial court had just read the elements for CSC-I with regard to Counts 21 to 29. Therefore, the word "also" was unnecessary and potentially misleading. To wit, it suggested that what was to follow was different than what came before but still pertained to CSC-I. Despite that concern, the trial court subsequently clarified the reason it referenced Counts 21 to 29 and CSC-I. Pertinently, the trial court noted that it was about to read the instructions regarding the elements for CSC-III, which was the lesser included offense of CSC-I. The instruction showed the jury that each CSC-I count had a corresponding CSC-III count, between which the jury was required to choose. This understanding of the instructions was then reinforced by the jury-verdict form, which specifically listed the charges in the alternative and required the jury to choose only one.

In effect, any potential confusion caused by the trial court was cleared up by the instructions immediately following the challenged wording and the jury-verdict form. Indeed, before reading the elements for CSC-III, the trial court specifically stated: "For each count [of CSC-I], you may also consider whether the defendant is guilty of the less serious crime known as [CSC-III] with force or coercion. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt[.]" For us to believe that the jury was confused by the instructions, we would be required to assume that the jury thought the trial court's reference to "this charge" was to CSC-I instead of CSC-III. Such an assumption defies logic and grammar. The "charge" the trial court had most recently mentioned was CSC-III, and the trial court then stated that it was going to instruct the jury on what was required to prove that charge.

-13-

Even beyond the dictates of the semantics involved, the jury had just been instructed regarding the elements of CSC-I at length. There was nothing on the record to suggest that the trial court would then begin to discuss *more* elements of CSC-I charges, especially after explaining that it was about to read the elements for CSC-III. Lastly, the elements for CSC-III as instructed by the trial court were different than CSC-I, but only to the extent the prosecution was not required to prove a personal injury suffered by the victim. The jury-verdict form then indicated that the CSC-I charges required proof of personal injury, while the CSC-III charges required only proof of force or coercion. Therefore, any lingering doubt about the trial court's instruction was clarified by the jury-verdict form.

In sum, the record shows that the trial court properly and appropriately instructed the jury regarding the elements of CSC-III. *Montague*, 338 Mich App at 37. Consequently, any objection to the instructions by defense counsel would have lacked merit, so we cannot conclude that defense counsel provided ineffective assistance. See *People v Leffew*, 508 Mich 625, 638; 975 NW2d 896 (2022) ("Defense counsel is not ineffective for failing to advance a meritless or frivolous argument.").

Even assuming that defense counsel could have successfully objected to the trial court's instructions, defendant would still not be entitled to appellate relief because he cannot show that his counsel's failure to object to the jury instructions prejudiced defendant.

Defendant alleges that there was confusion resulting in outcome-determinative error because of the mixed verdict returned by the jury. Defendant contends that the jury must have been confused because the prosecutor's case alleged that the victim suffered personal injury in the form of mental anguish as a result of the sexual assaults. Further, because the mental anguish was in place after all of the sexual assaults, the jury, if it properly understood the instructions, should have convicted defendant of either all CSC-I or all CSC-III charges. This argument by defendant lacks merit and is not supported by the record. Indeed, the jury's verdict suggests that the jury understood the instructions, contrary to defendant's argument. It is of note that there were three CSC-III convictions returned by the jury, and defendant was charged with three charges each of penile-vaginal, oral-vaginal, and digital-vaginal penetration. While defendant is correct that the mental anguish purportedly suffered by the victim existed after all of the assaults occurred, his argument ignores the causal nexus required to exist between the specific sexual assault and the mental anguish. MCL 750.520b(1)(f) ("A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and . . . [t]he actor *causes* personal injury to the victim and force or coercion is used to accomplish sexual penetration." (Emphasis added).

In other words, the jury reasonably could have concluded that the victim's mental anguish was caused by two types of penetration, but not the third type. Frustratingly, although no error is alleged in this regard, the jury-verdict form does not indicate what form of penetration connects to which count. Nevertheless, a reasonable reading of the record suggests that the jury had grounds to believe the victim's mental anguish primarily was caused by the oral and digital penetration of her vagina, as opposed to the penile penetration. The victim testified that she covered her face with a blanket while defendant orally and digitally penetrated her vagina because she did not want to see what was occurring. Further, the victim stated that she often cried while the digital and oral penetration happened. Potentially most importantly, Little testified that he believed the victim had

lasting trauma from the sexual assaults, particularly related to oral penetration. He stated that the victim did not allow him to make intimate contact with her in that manner. Little did not present similar testimony related to penile-vaginal penetrative sex. Notably, the victim testified that the digital penetration occurred simultaneously with the oral penetration. Given this testimony, the jury had a solid basis to determine that the victim suffered mental anguish as a result of the digital and oral penetration of her vagina, while still maintaining a reasonable doubt about whether such was caused by the penile penetration. This established good reason to convict defendant of six counts of CSC-I and three counts of CSC-III, and demonstrated that the jury fully understood its instructions.

Accordingly, there was no evidence to support that the jury actually was confused by the instructions. To the contrary, the jury exhibited its understanding of the jury instructions by returning a verdict of guilty for six counts of CSC-I and three counts of CSC-III. As a result, the record does not support that, absent an objection by defense counsel, " 'the result of the proceeding would have been different,' " and defendant's ineffective-assistance argument fails. *Jackson*, 313 Mich App at 431, quoting *Vaughn*, 491 Mich at 669.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Kirsten Frank Kelly
/s/ Michael J. Kelly

-15-